**TEXAS WORKFORCE COMMISSION,**
Appellant,

v.

**MIDFIRST BANK, Appellee.**

No. 03–99–00484–CV.

Court of Appeals of Texas,
Austin.

Feb. 28, 2001.

Jim Hill, Asst. Atty. Gen., Austin, for appellant.

Phillip D. Mockford, Jackson Walker L.L.P., Austin, for appellee.

Before Justices YEAKEL, PATTERSON and JONES.*

YEAKEL, Justice.

Appellee MidFirst Bank ("MidFirst") sued in district court to enforce an Oklahoma federal-court judgment in its favor against Reliance Healthcare of Texas, Inc. ("Reliance–Texas") and Reliance Healthcare of Houston, Inc. ("Reliance–Houston") (together "Reliance").[1] MidFirst also sought to enforce its perfected security interests in the receivables of Reliance originally held by the Comptroller of Public Accounts (the "Comptroller") under the administration of the Texas Department of Human Services ("TDHS"). Appellant Texas Workforce Commission ("TWC") obtained a significant portion of the receivables and applied the funds to partially

satisfy statutory liens that it held against Reliance due to Reliance's failure to pay former employees' wage claims and unemployment taxes. Both MidFirst and TWC sought summary judgment. The district court denied TWC's motion and granted summary judgment in MidFirst's favor for the Reliance receivables held by TWC but subject to MidFirst's lien. TWC appeals. We will affirm.

## FACTUAL BACKGROUND

### MidFirst's Claims Against Reliance

Reliance operated nursing homes in Texas. In October 1995 MidFirst, an Oklahoma bank, loaned $750,000 to Reliance. In exchange, Reliance executed and delivered a promissory note and security agreement to MidFirst. Under the security agreement, MidFirst acquired a security interest in, *inter alia*, all of Reliance's receivables. On October 19, 1995, MidFirst perfected its security interest by filing a financing statement with the Texas Secretary of State. *See* Tex. Bus. & Com. Code Ann. § 9.501(a)(2) (West Supp.2001). MidFirst also filed financing statements in the county records of a number of Texas counties where MidFirst believed Reliance was conducting business.

Reliance defaulted under the terms of the promissory note and the security agreement. MidFirst brought suit against Reliance in federal court in Oklahoma and obtained a judgment for the amount of the note plus interest. The federal court also ordered foreclosure of MidFirst's security interest. In July 1996 MidFirst filed its Oklahoma federal-court judgment with the district clerk of Travis County,[2] initiating this litigation.

---

* Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).

1. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 35.001–.008 (West 1997).

2. *See* Tex. Civ. Prac. & Rem.Code Ann. § 35.003 (West 1997) (authenticated foreign

*TWC's Claims Against Reliance*

As of February 1, 1996, Reliance was delinquent in the payment of unemployment taxes that it owed the State for the third and fourth quarters of 1995. TWC served notices of assessment on Reliance for these tax delinquencies. *See* Tex. Lab. Code Ann. § 213.031 (West 1996). When Reliance failed to contest the assessments, they became entitled to the same force and effect as a final judgment of a district court. *See id.* § 213.032(e). On June 24, 1996, TWC issued an abstract of assessment stating that Reliance–Texas owed TWC $43,212.78 for unemployment taxes and associated interest and penalties. *See id.* § 213.036 (West Supp.2001). There is no indication on the June abstract that it was ever filed.[3] On July 3, 1996, TWC issued an abstract of assessment stating that Reliance–Houston owed TWC $15,957.12 for unemployment taxes and associated interest and penalties. *See id.* The July abstract reflects that it was filed in Harris County on July 10, 1996.

TDHS administers funds received from the federal government to be paid to healthcare providers, such as Reliance. *See* Tex. Hum. Res.Code Ann. §§ 32.001–.040 (West 2001). Actual payment is made by the Comptroller through a system of vouchers and warrants. *See id.* § 32.029. Pursuant to the government code, warrants may be placed "on hold" when the recipient of a warrant owes a debt to the State. *See* Tex. Gov't Code Ann. § 403.055(a) (West Supp.2001). Once TWC issued the abstracts of assessments, such holds were placed on the warrants due Reliance. TWC obtained a power of attorney from Reliance and directed TDHS to release to TWC various Medicaid reimbursements warrants intended for Reliance, totaling $50,678.22 in partial satisfaction of the delinquent unemployment taxes.

During January 1996 Reliance was also the subject of several back-wage claims filed by its former employees. *See* Tex. Lab.Code Ann. §§ 61.001–.095 (West 1996 & Supp.2001). After investigating these claims, TWC served preliminary wage-determination orders on Reliance for failure to pay wages. *See id.* § 61.052 (West 1996). Because Reliance did not contest these orders, they also became final. *See id.* § 61.055. TWC claims in its motion for summary judgment that the wage orders became final "sometime in late-January of 1996." TWC issued notices to persons thought to have assets of Reliance. *See id.* § 61.091. In July 1996 TWC served on TDHS a notice of levy stating that Reliance owed $179,555.19 under chapter 61 of the Texas Labor Code. *See id.* § 61.093. Pursuant to this notice, TDHS and the Comptroller transferred to TWC $179,555.19 of the Medicaid warrants due Reliance to satisfy the wage claims. In sum, TWC recovered $230,233.41 of Reliance's Medicaid warrants, which it applied toward Reliance's debt for both the unemployment taxes and wage claims.

*MidFirst's Suit Against TWC*

In July 1996 MidFirst initiated this action.[4] MidFirst sought to have the district

---

judgment may be filed with clerk of Texas court and be entitled to same effect as judgment of that court).

3. TWC's collection manager testified by affidavit that this abstract of assessment was filed with a county clerk in Texas but did not specify the county.

4. The record before us contains only MidFirst's fourth amended original petition styled "MidFirst Bank v. Reliance Healthcare of Texas Inc., Reliance Healthcare of Houston, Inc., Richard B. White, Robert S. O'Daniel and Terry J. Wilson." However, the body of that pleading names Reliance–Texas, Reliance–Houston, TDHS, the Comptroller, and TWC as the defendants. The district clerk's

court declare TWC's liens invalid as against MidFirst's lien and to have the court declare that MidFirst has a superior right to other receivables still held by TDHS and the Comptroller. MidFirst sought damages for the taking of the receivables under article I, section 17 of the Texas Constitution (the "takings clause"). *See* Tex. Const. art. I, § 17. MidFirst also sought injunctive relief to prevent further transfers of Reliance funds and, in the alternative, a turnover order. *See* Tex. Civ. Prac. & Rem.Code Ann. § 31.002 (West Supp.2001).[5] TWC filed a plea to the jurisdiction, an affirmative defense of sovereign immunity, a general denial, and special exceptions. Both parties filed motions for summary judgment. In its motion, MidFirst asked the court to declare MidFirst's lien superior to those of TWC and that as between MidFirst and TWC, TWC's liens be invalidated and nullified; MidFirst asked the court to award it $230,233.41, representing the Reliance funds received by TWC by virtue of TWC's liens. Alternatively, MidFirst asked the court to declare that TWC took $230,233.41 in violation of the takings clause. TWC filed a competing motion for summary judgment and a motion to dismiss for lack of subject-matter jurisdiction.

The district court granted MidFirst's motion for summary judgment. The court declared that TWC's liens were nullified until such time as MidFirst's superior lien is fully satisfied. The court also ruled that TWC had violated the takings clause and rendered judgment in favor of MidFirst in the amount of the receivables that had been taken by TWC—the $230,233.41. The court denied TWC's motion for summary judgment and its motion to dismiss. TWC appeals.

## DISCUSSION

■■■ When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides and determine all questions presented. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). If we find error, we must render the judgment the trial court should have rendered. *See id.*

In this Court, TWC assigns three "points of error":

1. The trial court erred as a matter of law in granting MidFirst Bank's Motion for Summary Judgment and in failing to grant [TWC's] Motion for Summary Judgment.

2. The trial court erred because [TWC] was immune from suit and was immune from damages under the doctrine of sovereign immunity from MidFirst's causes of action under the Texas Constitution, the Texas Tax Code and the Texas Turnover Statute.

3. The trial court erred because ... [the Declaratory Judgments Act] does not provide for an independent cause of action against [TWC].

TWC's first point is a *Malooly Bros.* point and is sufficient to allow argument as to all

---

docket sheet reflects that at one time or another Texas Health Enterprises, Inc. and other individuals were parties to the proceeding. On the same day that she signed the final judgment in favor of MidFirst and against TWC, the district court severed the "remaining claims, causes of action and other matters" in the case from those disposed of by the final judgment. In this appeal, we thus con-sider only the issues addressed in the final judgment to which only MidFirst and Reliance are parties.

5. Although this statute has been amended since MidFirst filed suit, we cite the current version because the change does not affect our determination of this case.

the possible grounds upon which TWC's motion should have been granted and MidFirst's denied. *See Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970). The substance of TWC's argument is found in its second and third points, which attack MidFirst's ability to bring its suit.

In her judgment, the district court nullified TWC's liens until MidFirst's superior lien is fully satisfied. The court also declared that until MidFirst's lien is fully satisfied, TWC is not entitled to any of Reliance's receivables and further ordered that TWC pay to MidFirst $230,233.41, the amount TWC took in violation of the takings clause. The issues in this appeal, then, are whether the district court had jurisdiction to (1) nullify TWC's liens as to MidFirst, (2) declare that MidFirst's lien is superior and that TWC is not entitled to any of Reliance's receivables until such time as MidFirst's lien is fully satisfied, and (3) award damages based on the takings clause.

### Nullification

The tax code provides that in an action to determine the validity of a state tax lien, the lien may either be perpetuated and foreclosed or nullified. *See* Tex. Tax Code Ann. § 113.106(a) (West 1992). These are the only remedies provided. TWC concedes that "if a court determines a state tax lien to be 'unlawful or invalid,' *all it can do is nullify it.*" TWC further admits, "All the court was empowered to do under section 113.106 was to address the *validity* of a state tax lien." We do not read TWC's brief to challenge the power of the court to nullify a state tax lien under section 113.106.

### Declarations

▊ TWC argues that the Uniform Declaratory Judgments Act (the "Declaratory Judgments Act") [6] does not provide for an independent cause of action against TWC. According to TWC, without jurisdiction arising from a separate statute, a cause of action under the Declaratory Judgments Act will not lie against the State because of sovereign immunity.

▊ Generally, sovereign immunity, unless waived, protects the State, its agencies, and its officials from lawsuits for damages, absent legislative consent to sue the State. *Federal Sign v. Texas S. Univ.,* 951 S.W.2d 401, 405 (Tex.1997). However, a "party can maintain a suit to determine its rights without legislative permission." *Id.* at 404 (citing *Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, 712 (1945)); *see Texas Highway Comm'n v. Texas Ass'n of Steel Importers, Inc.,* 372 S.W.2d 525, 530 (Tex.1963) (legislative consent not required for declaratory-judgment action against state to determine parties' rights). Here, MidFirst sought a declaratory judgment to determine its rights as against TWC under its lien. MidFirst may bring this suit without legislative permission. *See Federal Sign,* 951 S.W.2d at 405. The cases TWC relies on are unpersuasive. *See, e.g., State v. Morales,* 869 S.W.2d 941, 942 (Tex. 1994) (explaining when civil litigant may bring suit to declare criminal statute unconstitutional); *Southwestern Bell Tel. Co. v. Public Util. Comm'n,* 735 S.W.2d 663, 666 (Tex.App.—Austin 1987, no writ) (in context of administrative proceedings, court's jurisdiction under Declaratory Judgments Act derives from its inherent power to hear and determine whether agency action was ultra vires or unconstitutional). We hold that sovereign immunity does not bar MidFirst's claim for declaratory relief.

### Takings

▊ Article I, section 17 of the Texas Constitution forbids the State from taking,

---

6. Tex. Civ. Prac. & Rem.Code Ann. § 37.001– .011 (West 1997 & Supp.2001).

damaging, or destroying a person's property for public use without payment of adequate compensation. Tex. Const. art. I, § 17. Violation of this section is established upon proof that (1) the State intentionally performed certain acts,[7] (2) that resulted in a taking of property, (3) for public use. *Green Int'l, Inc. v. State,* 877 S.W.2d 428, 434 (Tex.App.—Austin 1994, writ dism'd).

TWC argues that the district court erroneously applied the takings clause to the facts of this case. In an argument specific to the unemployment taxes, TWC asserts that the takings clause does not apply to the Unemployment Compensation Act.[8] Additionally, TWC's actions in recovering the *wage claims* did not amount to a taking because its actions were not for a public purpose. TWC also generally argues that the concept of a "taking" under the Texas Constitution is confined to eminent domain. Finally, TWC claims that the district court erred in awarding damages under the takings clause.

■ Relying on *Friedman v. American Surety Co.,* 137 Tex. 149, 151 S.W.2d 570, 575 (1941), TWC argues that the takings clause does not apply to its actions in collecting a tax. In *Friedman,* a surety company refused to reimburse Friedman for unemployment taxes he paid on behalf of a contractor. *Id.* at 574–75. The surety company challenged the constitutional validity of the statutes authorizing the tax on various constitutional grounds, including the takings clause. *See id.* at 575. The court held that the State has the power to tax and the takings clause does not infringe on that power. *See id.* at 577.

Thus, TWC is correct that the takings clause does not affect the validity of the unemployment tax, the state's authority to impose the tax, or the State's ability to collect the tax from the taxpayer. But that is not MidFirst's challenge; instead, MidFirst complains of TWC's actions in taking *specific property* in which MidFirst holds a *superior interest. Friedman* and the rule of law it states do not prevent MidFirst's claim.

■ TWC next argues that its actions in recovering the funds for wage claims were not in furtherance of a public purpose. *See Green Int'l,* 877 S.W.2d at 434 (for property owner to recover under takings clause, property must be taken for public purpose). TWC points out that the money it recovered for wage claims is available only to the claimants themselves, not the general public. *See* Tex. Lab.Code Ann. §§ 61.063(c), .064 (West 1996) (TWC must pay to claimant any wages collected and any interest earned).

However it is the action of TWC in depriving MidFirst of its right to property that constitutes the taking. Although the money taken may ultimately be paid to citizen claimants, TWC acted in fulfillment of a public purpose. The fact that the benefit inures to a specific group of people does not lessen the importance of enforcement of the labor code to the public at large. *See Housing Auth. v. Higginbotham,* 135 Tex. 158, 143 S.W.2d 79, 84 (1940). We hold that in serving the notice of levy on TDHS and obtaining funds that were rightfully the property of

---

**7.** The Texas Supreme Court's recent decision in *General Services Commission v. Little–Tex Insulation Co.,* 44 Tex.Sup.Ct.J. 397, 402 (Tex.2001), established that the State does not have the requisite intent when money or property is taken or withheld in the context of a contract dispute. *Little–Tex* does not alter

our analysis of the takings-clause violation because here there was no contractual relationship between MidFirst and TWC.

**8.** Tex. Lab.Code Ann. §§ 201.001–.101 (West 1996 & Supp.2001).

MidFirst, TWC was acting in furtherance of a public purpose.

 TWC also argues that the concept of a "taking" under the Texas Constitution is limited to eminent domain and should not be extended to a tax context. TWC cites no authority for the proposition that a constitutional taking is limited to a governmental authority annexing land. In fact, both TWC and MidFirst recognize that *County of Burleson v. General Electric Capital Corp.*, 831 S.W.2d 54 (Tex.App.— Houston [14th Dist.] 1992, writ denied), allowed a takings-clause action when a taxing authority illegally sold a mobile home in which a company had a security interest. *See* 831 S.W.2d at 57. In *General Electric Capital Corp.*, a local taxing authority foreclosed on a debtor's mobile home in order to collect a deficient tax. In doing so, the taxing authority acted contrary to the required procedures for the foreclosure of its statutory lien by failing to provide notice to the holder of a prior perfected security interest. The court rejected the taxing authority's claim that this was not a taking under the Texas Constitution and held that the taxing authority's "actions have damaged [the company] and deprived it of a valuable property interest without due process or compensation." *Id.* at 59. The court concluded that the company established a lawful cause of action under the takings clause. *See id.* at 60. We are not persuaded by TWC's attempt to distinguish *General Electric Capital Corp.*, and we will not limit takings-clause actions to situations involving eminent domain.

 Finally, TWC argues that the district court erred in awarding damages to MidFirst because the State is immune from liability for damages. *See Federal Sign*, 951 S.W.2d at 405. TWC asserts that there "is no implied right of action for damages for violation of state constitutional rights in general." While TWC may be correct,[9] the issue in this case is not a violation of "general constitutional rights" but a violation of the takings clause. Article I, section 17 is itself a waiver of sovereign immunity from both suit and *liability*. *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex.1980). The State has waived immunity for liability in a takings-clause action. *See id.*

 TWC also argues under its last point that MidFirst's interest in its collateral is not equivalent to a landowner's right to compensation because MidFirst "could never have executed on its alleged collateral because the Texas Government Code[10] prohibited the Comptroller from issuing any State warrants to Reliance because of pre-existing tax liabilities." (Footnote added.) "The government's duty to compensate for damaging property for public use ... [is] not dependent upon transfer of property rights." *Id.* at 790; *accord General Elec. Capital Corp.*, 831 S.W.2d at 60. Relying on *Gulf, Colorado & Santa Fe Railway Co. v. Eddins*, 60 Tex. 656 (1884), and *Gulf, Colorado & Santa Fe Railway Co. v. Fuller*, 63 Tex. 467 (1885), the supreme court explained in *Steele* that the takings clause is broad and that it is sufficient to entitle a person to compensation if that person's property has been damaged, damage meaning every loss or diminution of what is a person's own. The court went on to say that an owner cannot be deprived of her property's legal and proper use or of " 'any right therein or thereto.' " *Steele*, 603 S.W.2d at 790 (quoting *Fuller*, 63 Tex. at 470). TWC does not dispute that the warrants belonged to Reli-

---

**9.** *See City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex.1995).

**10.** Tex. Gov't Code Ann. § 403.055(a) (West Supp.2001).

ance in the sense that if there were no tax liens, the Comptroller would issue these warrants to Reliance. Also, TWC does not dispute that MidFirst perfected its lien before TWC's liens even arose. The money in question is, in essence, MidFirst's property. Just because the State, by way of the Comptroller, is in possession of that property does not defeat MidFirst's cause of action. The district court did not err when it assumed jurisdiction pursuant to the takings clause over this particular fact situation. *Cf. General Elec. Capital Corp.,* 831 S.W.2d at 59–60.

## CONCLUSION

We overrule all of TWC's points of error and affirm the district court's judgment.