**CITY OF DALLAS, Texas, Appellant**

v.

**VSC, LLC, Appellee.**

**No. 05–05–01227–CV.**

Court of Appeals of Texas, Dallas.

Jan. 4, 2008.

---

**9.** This designation is added at the request of Chief Justice Gray.

586

Charles Estee, Dallas, for Appellant.

James C. Mosser, Mosser Mallers PLLC Lawyers, Dallas, for Appellee.

Before Justices MOSELEY, FITZGERALD, and FRANCIS.

## OPINION ON REHEARING

Opinion by Justice FITZGERALD.

This Court's opinion of June 21, 2006 is withdrawn and our judgment of that date

is vacated. The following is now the opinion of this Court.

The City of Dallas, Texas appeals the denial of its plea to the jurisdiction in VSC, LLC's suit alleging the City took its property without just compensation and seeking declaratory judgment. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2007). We affirm in part and reverse and dismiss in part.

## BACKGROUND

In 2002, VSC operated a licensed vehicle storage facility, which authorized it to receive and store vehicles towed without the consent of their owners. TEX. OCC.CODE ANN. §§ 2303.001–.303 (Vernon 2004 & Supp.2007). VSC alleged Dallas police officers, with the approval, authorization, and direction of the City's policy makers, came onto VSC's property at various times and seized 277 vehicles.[1] The officers asserted the vehicles either had been reported stolen, had altered serial numbers, or were involved in other felony offenses. *See* TEX. TRANSP. CODE ANN. § 501.158 (Vernon 2007). VSC, however, alleged that these vehicles were not part of any criminal action or investigation when they were towed, when they arrived at VSC's storage facility, or when the police seized them. VSC alleged the City disposed of these vehicles without notifying VSC and that the City retained all funds collected from the disposition of the seized vehicles. VSC alleged it had "a legitimate and recognized property interest" in the seized vehicles that the City destroyed through the disposition of the vehicles without notice to VSC.

VSC sued the City in state court alleging several state and federal causes of action. The City removed the case to federal district court. At VSC's request, the federal court remanded three of the causes of action to the state court and abated the remaining federal claims until disposition of the state-court litigation. Two of the causes of action alleged the City's seizure and subsequent disposition of the vehicles without notice to VSC was a constitutional "taking" of VSC's property interest in the vehicles and violated VSC's right to just compensation under article one, section seventeen of the Texas Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. The third cause of action sought a declaratory judgment that (1) VSC is entitled to towing and storage fees for vehicles lawfully towed and stored at VSC's licensed storage facility even if the vehicles are reported stolen; (2) the City lacks authority to seize vehicles as stolen when VSC is entitled to towing and storage fees for those vehicles; and (3) even if the City is authorized to seize the vehicles from VSC's licensed storage facility, VSC is entitled to notice and a hearing under chapter 47 of the code of criminal procedure before the City disposes of the vehicles.

The City filed a plea to the jurisdiction asserting the trial court lacked jurisdiction over these claims. The trial court denied the plea to the jurisdiction. The City now brings this interlocutory appeal. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8).

---

1. VSC originally alleged 326 vehicles were illegally seized by the police and submitted a list of vehicles. During discovery, VSC provided a list of the vehicles. The list actually contained 324 vehicles because VSC omitted two numbers in counting to 326. Another 47 vehicles were disposed of in municipal court hearings under chapter 47 of the code of criminal procedure. VSC stated in its response to the City's plea to the jurisdiction that it "agrees that the disputes with regard to the vehicles on which a hearing has been held are moot. VSC does not seek damages for vehicle [sic] on which Chapter 47 hearings have been held."

## PLEA TO THE JURISDICTION

■ In its first issue, the City generally asserts the trial court erred in denying the plea to the jurisdiction. "Whether a court has subject matter jurisdiction is a question of law." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004); *see also Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002). "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226. "We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent." *Id.; see Dallas Cent. Appraisal Dist. v. 1420 Viceroy Ltd. P'ship*, 180 S.W.3d 267, 269 (Tex.App.-Dallas 2005, no pet.) ("[W]e liberally construe the pleadings in favor of jurisdiction, focusing on the pleader's intent."). "[I]f a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised...." *Miranda*, 133 S.W.3d at 227. If the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be denied. *Id.* at 227–28. If the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. This procedure generally mirrors that of a summary judgment under rule of civil procedure 166a(c), and the burden is on the government to meet the summary judgment standard of proof. *Id.* This standard "protect[s] the plaintiffs from having to 'put on their case simply to establish jurisdiction.'" *Id.* (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000)).

## CONSTITUTIONAL TAKING

■ In its second, third, and fourth issues, the City asserts the trial court erred in denying its plea to the jurisdiction to VSC's takings claim under the Texas Constitution. The City does not have immunity from a valid takings claim under article one, section seventeen. *Bell v. City of Dallas*, 146 S.W.3d 819, 825 (Tex.App.-Dallas 2004, no pet.). If the plaintiff fails to allege a valid takings claim, the City retains its immunity to suit. *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 599 (Tex.2001); *Bell*, 146 S.W.3d at 825. Whether particular facts constitute a taking is a question of law. *Little–Tex Insulation Co.*, 39 S.W.3d at 598; *Bell*, 146 S.W.3d at 825.

■ Article one, section seventeen of the Texas Constitution provides, "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person...." TEX. CONST. art. I, § 17. A takings cause of action consists of three elements: (1) an intentional act by the government under its lawful authority (2) resulting in a taking of the plaintiff's property (3) for public use. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007); *City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex.2004); *Little–Tex Insulation Co.*, 39 S.W.3d at 598.

### Authorized Governmental Action

■ In its second issue, the City asks if "a takings claim [can] be based on alleged unauthorized or unlawful governmental action." The City argues that a takings claim must be based on authorized, lawful government actions. *See Holland*, 221 S.W.3d at 643; *Jennings*, 142 S.W.3d at 314; *Little–Tex Insulation Co.*, 39 S.W.3d at 598. The City then asserts VSC alleged that the police officers' seizures of

the vehicles stored by VSC were unlawful and unauthorized.

The City did not make this argument in its plea to the jurisdiction. Our jurisdiction is limited to reviewing the grant or denial of the plea to the jurisdiction. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8); *Brenham Housing Auth. v. Davies,* 158 S.W.3d 53, 61 (Tex.App.-Houston [14th Dist.] 2005, no pet.); *City of Dallas v. First Trade Union Sav. Bank,* 133 S.W.3d 680, 686–87 (Tex.App.-Dallas 2003, pet. denied). We do not have jurisdiction to consider grounds outside the plea to the jurisdiction. *Davies,* 158 S.W.3d at 61; *First Trade Union Sav. Bank,* 133 S.W.3d at 687 ("we limit our discussion to the order denying the plea to the jurisdiction filed by the City, not to some plea never filed with the trial court."). Accordingly, we cannot consider the City's argument. We overrule the City's second issue.

### Taking

In its third issue, the City contends its seizure of the vehicles was not a taking under article one, section seventeen because the vehicles were seized pursuant to the City's police power, not its eminent domain power.

The City asserts that the damage or destruction of property that occurs when the government exercises its police power is not compensable under article one, section seventeen of the constitution. The City argues that the police had the power to seize stolen vehicles and vehicles with altered serial numbers. *See* TEX. TRANSP. CODE ANN. § 501.158(a) ("A peace officer may seize a vehicle or part of a vehicle without a warrant if the officer has probable cause to believe that the vehicle or part (1) is stolen; or (2) has had the serial number removed, altered, or obliterated."). The City asserts that all the vehicles seized were subject to this provision. Thus, the City argues, because all the seizures were pursuant to the City's police power and not its power of eminent domain, the seizures cannot be takings under article one, section seventeen.

■ Our review of applicable authority shows the fact that a taking, destruction, or damage that occurs pursuant to the valid exercise of police power does not bar the property owner's claim for compensation under article one, section seventeen. For example, in *Steele v. City of Houston,* 603 S.W.2d 786 (Tex.1980), the plaintiffs were the owners-lessors and the lessees of a house in which three escaped convicts took refuge. *Id.* at 788–89. Plaintiffs alleged the City, through its police officers, fired incendiary devices into the house in an attempt to apprehend the fugitives. The resulting fire destroyed the house and all its contents. The plaintiffs sued, alleging the destruction of their house and belongings entitled them to adequate compensation under article one, section seventeen.[2] *Id.* The supreme court emphasized that its interpretation of article one, section seventeen "has moved beyond the earlier notion that the government's duty to pay for taking property rights is excused by labeling the taking as an exercise of police powers." *Id.* The supreme court held the plaintiffs had pleaded a lawful cause of action under article one, section seventeen.[3] *Id.* at 791. As *Steele*

---

**2.** The supreme court noted that "[n]either the parties nor the courts below have regarded this case as one of eminent domain or inverse condemnation." *Steele,* 603 S.W.2d at 789.

**3.** The supreme court observed that the City could "defend its actions by proof of great public necessity. Mere convenience will not suffice." *Steele,* 603 S.W.2d at 792. The court held that the City's "scant proof" of great public necessity did not establish the defense as a matter of law. *Id.*

illustrates, the fact that property is taken, damaged, or destroyed pursuant to the government's police power does not bar a takings claim under article one, section seventeen. *See also Sheffield Dev. Co. v. City of Glenn Heights,* 140 S.W.3d 660, 670 (Tex.2004) (in examining whether rezoning of certain property was a taking, supreme court stated, "physical possession is, categorically, a taking, a taking for which compensation is constitutionally mandated, but a restriction in the permissible uses of property or a diminution in its value, resulting from regulatory action within the government's police power, may or may not be a compensable taking"); *DuPuy v. City of Waco,* 396 S.W.2d 103, 107 n. 3 (Tex.1965) (in discussing difference between eminent domain and police power, court observed, referring to police power, "it is universally conceded that when land or other property is actually taken from the owner and put to use by the public authorities, the constitutional obligation to make just compensation arises, however much the use to which the property is put may enhance the public health, morals or safety" (quoting 1 NICHOLS, EMINENT DOMAIN §§ 1.42, 1.42(1) (3d 1964))).

 In a related argument, the City asserts that a takings claim cannot exist absent specific governmental intent to exercise the power of eminent domain. Thus, the City argues, because it seized the vehicles pursuant to a statute authorizing it to do so, section 501.158(a) of the transportation code, and not pursuant to the eminent domain power,[4] the seizure of

the vehicles cannot constitute a takings claim. The City relies on a supreme court case and two opinions from courts of appeals. *See Little–Tex Insulation Co.,* 39 S.W.3d at 598–99; *Kaufman County v. Crow,* 176 S.W.3d 921 (Tex.App.-Dallas 2005, pet. denied); *Smith v. Lutz,* 149 S.W.3d 752 (Tex.App.-Austin 2004, no pet.). The two opinions from the courts of appeals rely on the supreme court's opinion in *Little–Tex Insulation Co.,* so we address that opinion first. *See Crow,* 176 S.W.3d at 927 (citing *Little–Tex Insulation Co.*); *Smith,* 149 S.W.3d at 761 (same); *see also Holland,* 221 S.W.3d at 643.

In *Little–Tex Insulation Co.,* the State contracted with the plaintiff for asbestos abatement, and the State terminated the contract when it was unsatisfied with the plaintiff's performance. *Little–Tex Insulation Co.,* 39 S.W.3d at 594. The plaintiff sued the State alleging various causes of action, including breach of contract and a takings claim. The supreme court concluded that the State had not waived its immunity from suit for the takings claim.[5] The court stated,

Texas courts have long recognized that the State wears two hats: the State as a party to the contract and the State as sovereign. The State, in acting within a color of right to take or withhold property in a contractual situation, is acting akin to a private citizen and not under any sovereign powers. In this situation, the State does not have the intent to take under its eminent domain powers; the State only has an intent to act within

---

4. "Eminent domain is the right or power of a sovereign state to appropriate private property for the promotion of the general welfare." *Valero Eastex Pipeline Co. v. Jarvis,* 926 S.W.2d 789, 792 (Tex.App.-Tyler 1996, writ denied) (quoting *Byrd Irrigation Co. v. Smythe,* 146 S.W. 1064, 1065 (Tex.Civ.App.-San Antonio 1912, no writ)).

5. After the supreme court issued its opinion, the legislature passed a statute waiving the government's immunity from suit for certain breach of contract claims. *See* TEX. LOCAL GOV'T CODE ANN. §§ 271.151–.160 (Vernon 2005); *Tooke v. City of Mexia,* 197 S.W.3d 325, 344–46 (Tex.2006).

the scope of the contract. Because [the State] was acting under colorable contractual rights, it did not have the requisite intent to take [the plaintiff's] labor and materials under any eminent domain powers. Accordingly, [the plaintiff's] constitutional-takings claim must fail.

*Id.* at 599 (citations omitted).

The City misreads *Little–Tex Insulation Co.* as requiring, for a takings claim, that the government intend to act under its eminent domain power. We reject the City's interpretation that the only cognizable takings claims are those involving explicit exercises of eminent domain power. As *Steele* demonstrates, a takings claim can be based upon the exercise of police power with no intent to act under the eminent domain power. *See Steele,* 603 S.W.2d at 789 (supreme court did not regard case as one of eminent domain). *Little–Tex Insulation Co.* cites *Steele* for the elements of a taking. *See Little–Tex Insulation Co.,* 39 S.W.3d at 598 ("To establish a takings claim, [the claimant] must prove (1) the state intentionally performed certain acts, (2) that resulted in a 'taking' of property, (3) for public use"); *see also Tex. Workforce Comm'n v. Midfirst Bank,* 40 S.W.3d 690, 697 (Tex.App.-Austin 2001, pet. denied) ("we will not limit takings-clause actions to situations involving eminent domain").

The proper interpretation of the language quoted above from *Little–Tex Insulation Co.* is the government must intend to act under its sovereign powers, which include both eminent domain and police power. *See Sefzik v. City of McKinney,* 198 S.W.3d 884, 898 (Tex.App.-Dallas 2006, no pet.) ("The police power may be loosely described as the power of the sovereign .... ") (quoting *DuPuy,* 396 S.W.2d at 107 n. 3). In that case, the court determined there was no such intent because the government was acting as a party to a contract, which does not involve any sovereign power. *Little–Tex Insulation Co.,* 39 S.W.3d at 599. Likewise, in *Smith v. Lutz,* "the University was acting under color of its contractual rights" and not under any of its sovereign powers. *See Smith,* 149 S.W.3d at 761. In *Kaufman County v. Crow,* the county was not acting under its sovereign powers when it refused to pay an illegal claim unsupported by a contract. *See Crow,* 176 S.W.3d at 927. The City cites no case where a court has rejected a takings claim involving the taking, damage, or destruction of property under a sovereign power other than eminent domain.

We conclude in the instant case that whether the City took, damaged, or destroyed property pursuant to its police power and not its eminent domain power has no effect on VSC's takings claim. We overrule the City's third issue.

### VSC's Property Interest

■■■ In its fourth issue, the City asks, "Does VSC, as a non-consent vehicle storage facility, have a lien or vested property interest in vehicles towed without consent?" Absent a cognizable property interest, a claimant is not entitled to compensation under article one, section seventeen. *Hallco Tex., Inc. v. McMullen County,* 221 S.W.3d 50, 56 (Tex.2006). If VSC lacks a cognizable property interest, then it cannot plead a valid takings claim, and the City would retain its immunity. *See Bell,* 146 S.W.3d at 825.

VSC argues it had possessory liens that were destroyed when the City seized the vehicles. The City argues VSC had no lien or other property interest in the vehicles.

VSC argues it has the "garageman's lien" under section 70.003(c) of the property code:

> A garageman with whom a motor vehicle ... is left for care has a lien on the motor vehicle ... for the amount of the charges for the care, including reasonable charges for towing the motor vehicle ... to the garageman's place of business.

TEX. PROP.CODE ANN. § 70.003(c) (Vernon 2007). The City argues this lien does not apply to nonconsensual towing and storage, citing one Texas Supreme Court case and two federal cases. These cases, however, involved repairs and maintenance made without the vehicle owner's consent; they do not concern towing and storage. *See Drake Ins. Co. v. King,* 606 S.W.2d 812, 818 (Tex.1980); *see also Astraea Aviation Servs., Inc. v. Nations Air, Inc.,* 172 F.3d 390, 393–94 (5th Cir.1999); *Reimer v. Smith,* 663 F.2d 1316, 1325 n. 7 (5th Cir. 1981). As to towing and storage charges, a driver in Texas impliedly agrees to allow his vehicle to be towed and stored when authorized by law. *See Bray v. Curtis,* 544 S.W.2d 816, 818–19 (Tex.Civ.App.-Corpus Christi 1976, writ ref'd n.r.e.). Property code section 70.003(c) authorizes a lien where the garageman came into possession of the vehicle lawfully. *See id.; see also Elite Towing, Inc. v. LSI Fin. Group,* 985 S.W.2d 635, 640 (Tex.App.-Austin 1999, no pet.). The City does not assert that VSC came into possession of the vehicles unlawfully.

The City also argues that no lien exists because the Vehicle Storage Facility Act, which authorizes the storage of vehicles towed without consent, does not contain a provision creating a lien. *See* TEX. OCC.CODE ANN. §§ 2303.001–.303. The absence from the Vehicle Storage Facility Act of a provision creating a lien does not mean no lien exists. Section 2303.157 authorizes a vehicle storage facility to sell a vehicle that has not been claimed by the owner or taken into custody by a law enforcement agency under chapter 683 of the transportation code. TEX. OCC.CODE ANN. § 2303.157 (Vernon 2004). Under chapter 683, a law enforcement agency may take into custody abandoned vehicles. After giving notice to the owner and lienholders, the law enforcement agency must sell the vehicle or keep it for its own uses. However, chapter 683 provides that the law enforcement agency must give any garagekeeper with a "garagekeeper's lien" [6] notice of the time and place of the sale. TEX. TRANSP. CODE ANN. § 683.014(b) (Vernon Supp.2007). If there is a garagekeeper's lien, the law enforcement agency must sell the vehicle and cannot keep it. *Id.* § 683.016(c) (Vernon 1999). These statutes show the legislature did not have to provide again for a lien under the Vehicle Storage Facility Act because a garageman's lien already exists under section 70.003(c) of the property code. *See id.* § 683.032(c) ("This subchapter does not impair any lien that a garage keeper has on a vehicle" except for termination or limitation of the claim for failure to report the vehicle); 43 TEX. ADMIN. CODE § 18.01 ("Other laws which may affect the operations of a vehicle storage facility are ... Property Code, [§ ] 70.003....").

The City next argues that a valid lien is dependent on a valid debt, and VSC could not have a valid debt for towing and

---

**6.** Chapter 683 does not purport to create a "garage keeper's lien"; it provides the procedure for disposing of the vehicle when the lien exists. No statute other than chapter 683 of the transportation code refers to a "garagekeeper's lien." It appears the legislature intended for the "garagekeeper's lien" under chapter 683 of the transportation code to be the "garageman's lien" under section 70.003(c) of the property code.

storage because, as the City argues, "[a]ll of the vehicles were stolen." We disagree. First, as discussed above, the owner of a vehicle impliedly consents to the towing and storage of his vehicle when authorized by law. *See* TEX. PROP.CODE ANN. § 70.003(c); TEX. TRANSP. CODE ANN. § 545.305(b) (Vernon 1999), §§ 643.206 (Vernon Supp.2007), 683.032(c); *Elite Towing, Inc.*, 985 S.W.2d at 640; *Bray*, 544 S.W.2d at 818–19. The City does not explain how the fact that the vehicle has been stolen affects the validity of the implied consent. This Court will not make the City's arguments for it.[7] *See Robertson v. Sw. Bell Yellow Pages, Inc.*, 190 S.W.3d 899, 903 (Tex.App.-Dallas 2006, no pet.); *see also Murray v. Devco, Ltd.*, 731 S.W.2d 555, 557 (Tex.1987) (appellant bears burden to show judgment is erroneous to obtain reversal). Second, the City asserts it proved as a matter of law that all the vehicles were stolen. The affidavits of Dallas Police Officers Michael Coker and J.D. Dukes proved some of the vehicles were *reported* stolen,[8] but they did not prove any of the vehicles was actually stolen. Therefore, even if the garageman's lien cannot attach to a stolen vehicle, which we need not decide in this case, the City has failed to prove the lien could not attach because it failed to prove as a matter of law that all the vehicles were stolen.

 The City also argues that liens are not property that can be "taken" under article one, section seventeen of the Texas Constitution. We disagree. Liens can be "taken" by the government. *See County of Burleson v. Gen. Elec. Capital Corp.*,

831 S.W.2d 54, 60 (Tex.App.-Houston [14th Dist.] 1992, writ denied); *cf. Midfirst Bank*, 40 S.W.3d at 697–98 (government seizure of collateral in form of receivables violated article one, section seventeen when plaintiff had lien superior to government's lien).

 The City argues that any lien VSC may have does not apply to vehicles reported stolen or vehicles with altered serial numbers because police officers may seize those vehicles. Section 501.158(b) provides that "a vehicle or part seized under this section may be treated as stolen property for purposes of custody and disposition of the vehicle or part." TEX. TRANSP. CODE ANN. § 501.158(b). Again, the City does not explain in its brief or in its plea to the jurisdiction how that provision defeats VSC's garageman's lien. This Court will not make the City's arguments for it. *See Robertson*, 190 S.W.3d at 903; *see also Murray*, 731 S.W.2d at 557. We conclude that this argument is inadequately briefed. *See* TEX.R.APP. P. 38.1(h).

We conclude the City has failed to establish as a matter of law that VSC had no property interest subject to being taken by the City. We overrule the City's fourth issue.

Because the City has failed to show the trial court lacked jurisdiction over VSC's cause of action for damages alleging a taking of VSC's property for public use without adequate compensation, we hold the trial court did not err in denying the City's plea to the jurisdiction as to that

---

**7.** Because the City failed to properly brief this issue, we make no holding regarding whether a garageman's lien may attach when a stolen vehicle is legally towed and stored.

**8.** Dukes stated in his affidavit, "Of the vehicles listed in VSC's Ex. 1, excluding those listed above for which no records were located, the City's records indicate all had been

reported stolen either to the Dallas Police Department or to another law enforcement agency or had altered VIN numbers." Coker stated in his affidavit, "All of these vehicles had been previously reported as stolen, had altered VINs, or were involved in other felony offenses."

cause of action.[9] However, we hold the trial court abused its discretion in denying the plea to the jurisdiction to VSC's claim for damages under article one, section seventeen based on allegations that the City took, damaged, or destroyed VSC's property—its alleged liens on the vehicles in question—for a private purpose.

## DECLARATORY JUDGMENT

In its first and fifth through seventh issues, the City asserts the trial court erred by denying its plea to the jurisdiction to VSC's declaratory judgment action. Under the Uniform Declaratory Judgments Act, courts acting within their jurisdiction have the power "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." TEX. CIV. PRAC. & REM.CODE ANN. § 37.003(a) (Vernon 1997). "[A]ll persons who have or claim any interest that would be affected by the declaration must be made parties." *Id.* § 37.006(a). The declaratory judgment act does not give courts the power to rule on hypothetical or contingent situations. *OHBA Corp. v. City of Carrollton,* 203 S.W.3d 1, 6 (Tex. App.-Dallas 2006, pet. denied).

VSC alleged there were disputes between it and the City regarding situations where vehicles are lawfully towed and stored in a vehicle storage facility and are subsequently reported stolen. VSC sought three declarations: (1) that it "is entitled to towing and storage fees under state law for vehicles lawfully towed and stored even if the vehicles are at some point reported stolen"; (2) that the "City lacks authority to seize vehicles as stolen to which [VSC] is entitled to towing and storage fees and that have been lawfully recovered and stored by [VSC] and report-

ed to [the] City"; and (3) that VSC "is an interested person with a possessory interest in the vehicles and is entitled to notice and a hearing pursuant to Chapter 47 of the Texas Code of Criminal Procedure even if [the] City is authorized to seize the vehicles reported stolen that have been recovered by [VSC] and reported to [the] City." In its response to the City's plea to the jurisdiction, VSC also "request[ed] its rights be determined prospectively, not in order to establish liability for money damages against [the] City for past conduct."

In its fifth issue, the City asserts the trial court lacked jurisdiction over the declaratory judgment claims because immunity from suit bars declaratory judgment actions that seek to establish the basis for monetary damages. The cases the City cites for this proposition involved suits for declaratory judgment that would have established the basis for monetary damages in causes of action from which the government had immunity. *IT–Davy,* 74 S.W.3d at 855–56 (no jurisdiction over suit for breach of contract and declaratory judgment); *State v. Morales,* 869 S.W.2d 941, 947 (Tex.1994) (no jurisdiction over suit seeking injunction and declaratory judgment barring enforcement of anti-sodomy statute). None of the cases involved declaratory relief that could be used as the basis for a cause of action to which the government had waived immunity. The declaratory judgment statute does not expand the courts' jurisdiction; it is merely a procedural device for deciding cases already within a court's jurisdiction. *IT–Davy,* 74 S.W.3d at 855; *Morales,* 869 S.W.2d at 947. Because the City's immunity is waived for takings claims, the City has not established that immunity bars declaratory judgment claims used as a ba-

9. We do not hold that VSC, in fact, has a lien on any vehicles or that VSC has a takings claim as a matter of law. We hold only that the City failed to establish on appeal that the trial court lacked jurisdiction over this portion of VSC's takings claim.

sis for recovery of damages in a takings claim. We overrule the City's fifth issue.

■■■■■ The City also asserts VSC's declaratory judgment suit cannot be brought because the claims to which it relates are fully matured. Declaratory judgment "is not available to settle disputes already pending before a court." *US Bank, N.A. v. Prestige Ford Garland Ltd. P'ship*, 170 S.W.3d 272, 278 (Tex. App.-Dallas 2005, no pet.) (quoting *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex.1990)). The City did not make this argument in its plea to the jurisdiction. We do not have jurisdiction to consider grounds outside the plea to the jurisdiction. *Davies*, 158 S.W.3d at 61; *First Trade Union Sav. Bank*, 133 S.W.3d at 687. Accordingly, we cannot consider the City's argument.

■■■■■ In the sixth issue, the City asserts the trial court lacked jurisdiction to declare the requested relief because VSC is no longer licensed to operate a vehicle storage facility for nonconsensual tows, which renders its requested relief too speculative, hypothetical, and contingent to constitute a justiciable issue. A declaratory judgment is available only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex.1995). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interest and not merely a theoretical dispute." *Id.* A justiciable controversy need not be a fully ripened cause of action. *Tex. Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153 (Tex. App.-Austin 1998, no pet.). To confer jurisdiction, the fact situation must manifest

the "ripening seeds of a controversy." *See id.* at 153–54. Ripening seeds of a controversy "appear where the claims of several parties are present and indicative of threatened litigation in the immediate future which seems unavoidable, even though the differences between the parties as to their legal rights have not reached the state of an actual controversy." *Id.* (quoting *Ainsworth v. Oil City Brass Works*, 271 S.W.2d 754, 761 (Tex.Civ.App.-Beaumont 1954, no writ)). "A declaratory judgment action does not vest a court with the power to pass upon hypothetical or contingent situations, or to determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication." *Tex. Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 846 (Tex.App.-Austin 2002, pet. denied).

■■■■■ VSC's statement of the dispute between it and the City concerned vehicles stored in a licensed vehicle storage facility,[10] but the requested declaratory relief was not limited to licensed vehicle storage facilities or to the storage of vehicles towed without consent. The requested declarations could apply equally to vehicles towed and stored with the consent of the vehicles' operators that are subsequently reported stolen. Despite the loss of its license to operate a facility for storing vehicles from non-consensual tows, VSC's allegations demonstrate the "ripening seeds of a controversy" and the existence of a justiciable issue, and the requested relief is not too speculative, hypothetical, or contingent to constitute a justiciable issue. *Moore*, 985 S.W.2d at 154. We overrule the City's sixth issue.

10. A vehicle towed without consent that is not taken into police custody may be taken only to a licensed vehicle storage facility. *See* Tex. Occ.Code Ann. § 2303.003(a) (Vernon 2004); Tex. Transp. Code Ann. §§ 684.001(8), .012(a), .014(a) (Vernon Supp.2007).

In the seventh issue, the City asserts the trial court lacked jurisdiction to declare the requested relief without the vehicles' owners being joined as parties. The Declaratory Judgment Act provides: "When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties." TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(a).

VSC's first requested declaration includes that it "is entitled to towing and storage fees." The fees to which VSC asserts it is entitled would be owed by the vehicle owners, not the City. See TEX. OCC. CODE ANN. § 2303.155(b) (Vernon Supp. 2007); TEX. TRANSP. CODE ANN. §§ 683.012(b)(4), 684.012(a) (Vernon Supp. 2007). Those owners are not parties to this suit. "A declaratory judgment requires a justiciable controversy as to the rights and status of parties actually before the court for adjudication...." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex.2004). However, VSC waived its declaratory judgment claims as to the past seizures of the vehicles and asserted it sought only prospective relief. The City's plea to the jurisdiction concerning failure to join necessary parties did not address this aspect of VSC's first requested declaration. Accordingly, whether the trial court lacks jurisdiction over this claim due to the failure to join necessary parties is not before us. See *Davies*, 158 S.W.3d at 61; *First Trade Union Sav. Bank*, 133 S.W.3d at 687.

The second requested declaration, that the "City lacks authority to seize vehicles as stolen to which [VSC] is entitled to towing and storage fees and that have been lawfully recovered and stored by [VSC] and reported to [the] City," does not require a declaration of the rights and interests of the vehicle owners. This declaration involves a controversy between the City's right to seize the vehicles as stolen and VSC's status as a garageman's lienholder. It seeks a determination of VSC's rights and the City's authority under multiple statutes. See *id*. This determination does not involve the rights of any vehicle owners. Accordingly, the trial court does not lack jurisdiction over this requested declaration due to the failure to join the vehicle owners.

The City also asserts the trial court lacked jurisdiction over the second requested declaration because VSC did not join the Texas Attorney General as a party. The City argues that the requested declaration implicitly requests the trial court to declare unconstitutional Texas Transportation Code section 501.158; and, the City asserts, section 37.006 of the Texas Civil Practice and Remedies Code requires service on the Attorney General of any suit for declaratory judgment alleging a statute is unconstitutional. See *id*. § 37.006(b). The City did not include this argument in its plea to the jurisdiction before the trial court. Accordingly, it is not before us in this interlocutory appeal. See *Davies*, 158 S.W.3d at 61; *First Trade Union Sav. Bank*, 133 S.W.3d at 687.

The City also argues that the trial court lacks jurisdiction over the second requested declaration because the validity of the search and seizure was an issue specifically retained by the federal court and not remanded. The City did not present this argument in its plea to jurisdiction. Accordingly, it is not before us. *Davies*, 158 S.W.3d at 61; *First Trade Union Sav. Bank*, 133 S.W.3d at 687.

Finally, VSC sought a declaration that it was entitled to notice and a hearing regarding any proceedings by the City under chapter 47 of the code of criminal procedure. Chapter 47 governs the disposition of property seized as stolen. See TEX.CODE

CRIM. PROC. ANN. arts. 47.01–.12 (Vernon 2006). The City argues VSC is not entitled to notice and a hearing under chapter 47 of the code of criminal procedure because VSC does not claim ownership of the vehicles seized by the police. However, the issue before us in this limited, interlocutory appeal is not whether VSC will prevail in declaratory judgment actions but whether the trial court has jurisdiction to determine the declaratory judgment claim. The City's arguments do not concern the trial court's jurisdiction. The fact that the City may prevail on the declaratory judgment claim does not establish that the trial court lacked jurisdiction over the claim.[11]

We overrule the City's seventh issue.

### Federal Takings Claim

 In its eighth issue, the City asserts VSC's federal takings claims are not ripe because they cannot be ruled on until the state takings claims are denied. The Texas Supreme Court, however, has held that state and federal takings claims may be brought in the same action even though the federal takings claim cannot be ruled on until after the state takings claim is denied. *Town of Flower Mound v. Stafford Estates Ltd. P'ship*, 135 S.W.3d 620, 646 (Tex.2004). We overrule the City's eighth issue.

### CONCLUSION

We sustain the City's first issue in part and overrule it in part. We reverse the trial court's order to the extent it denied the City's plea to the jurisdiction to VSC's claim for taking for "private purpose," and we order that claim dismissed for want of jurisdiction. In all other respects, we affirm the trial court's order denying the City's plea to the jurisdiction.

---

11. We make no holding in this appeal from the denial of a plea to the jurisdiction as to whether the City would be entitled to judgment in its favor if it proves no notice or hearings under chapter 47 were necessary.