IN THE SUPREME COURT OF TEXAS
 
═══════════
No. 
08-0265
════════════
 
City of Dallas, 
Petitioner,
 
v.
 
VSC, LLC, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Fifth 
District of Texas
════════════════════════════════════════════════════
 
 
Argued January 8, 2010
 
 
            
Justice Wainwright, joined by Justice Johnson and Justice Guzman, dissenting.            
A peace officer may take possession without a warrant of property in the 
hands of innocent third parties if he or she has probable cause to believe it 
may have been stolen. See Tex. 
Transp. Code § 501.158 (a) (“A peace officer may seize a vehicle or 
part of a vehicle without a warrant if the officer has probable cause to believe 
that the vehicle or part: (1) is stolen; or (2) has had the serial number 
removed, altered, or obliterated.”). The government holds such property, at 
times at private storage facilities, until its usefulness, if any, as evidence 
in a judicial proceeding is over and the actual owner is determined. Under such 
circumstances, we expect our government to preserve and protect individuals’ 
property and dispose of it only when allowed by law and with notice to the 
property’s owners. In this case, a third party with a protectable interest in 
property that was seized sought, among other things, injunctive relief in state 
district court to prohibit the government from disposing of that interest and 
declaratory relief seeking recognition of its rights in the property. During the 
pendency of the lawsuit, the government not only physically removed more of the 
property, but also disposed of the property subject to the original suit without 
notice or compensation to the third party. The third party had a storage lien on 
confiscated vehicles to secure its right to be paid for the storage services it 
provided.
            
The Court holds that because the third party failed to pursue remedies 
through a vague, incomplete, and likely constitutionally infirm statutory 
procedure, its recovery is precluded in the original suit filed in district 
court requesting the same relief the Court says it must seek as a prerequisite 
to a takings claim. The Court, on an issue not raised by the parties, dismisses 
VSC’s claims for its failure to specifically plead a claim (1) usually initiated 
in municipal court that is not a required prerequisite, (2) that the City argued 
at the trial court and the court of appeals was unavailable for VSC to seek 
during the pendency of a lawsuit, covering the same conduct, and (3) where VSC 
sought equivalent relief through injunctions and declaratory judgment actions. I 
would hold that VSC sought the relief under Chapter 47 of the Code of Criminal 
Procedure that the Court holds is a prerequisite to an inverse condemnation 
claim. VSC satisfied that prerequisite with its pleadings. And on the merits, I 
would hold that there are fact questions as to whether and how the City disposed 
of the vehicles at issue and affirm the trial court’s denial of the plea to the 
jurisdiction. I therefore respectfully dissent.
I. Factual and 
Procedural Background
            
The Court’s brief recitation of the facts omits important information 
regarding the substance and timing of VSC’s claims and the government’s actions 
regarding VSC’s property. In 2002, VSC operated a Vehicle Storage Facility 
licensed in accordance with the Vehicle Storage Facility Act (VSFA), which 
authorized VSC to receive and store vehicles towed to its lot without the 
owners’ consent. Tex. Occ. Code §§ 
2303.001–.305. In 2002 the Dallas Police Department (DPD), 
directed by the City of Dallas (City), entered VSC’s property and took 
possession of fifty vehicles from VSC’s storage lot. VSC stored the vehicles 
towed there. Four days after the first fifty vehicles were seized, VSC sought a temporary restraining order in state 
district court against the City, presumably to prevent seizures of any more 
vehicles. Eventually, the City filed proceedings under Chapter 47 of the Texas 
Code of Criminal Procedure to determine possession of the allegedly stolen 
vehicles. See Tex. Code Crim. Proc. arts. 47.01–.12. VSC participated in a hearing before a municipal 
court judge pursuant to article 47.01a. See id. art. 47.01a. The municipal court 
awarded eighteen of the vehicles to their owners. Fourteen of those eighteen 
awards were contingent upon the owners paying VSC the storage fees due. The 
municipal court awarded the remaining thirty-two vehicles to VSC.[1]
            
Even though its district court action remained pending, VSC contends that 
the City seized a total of 276 additional vehicles, and that the City stored 
some of the seized vehicles, released some to their owners, and sold the rest, 
but failed to pay VSC any storage fees collected from those sales. The City 
admitted that it seized 326 vehicles from VSC’s lot. The City does not indicate 
whether it used Chapter 47 hearings to dispose of these additional vehicles, and 
the record does not provide the answer. VSC asserts that the City did not notify 
it of any hearings on the remaining 276 vehicles and did not advise VSC of how 
it had disposed of any of the vehicles. Moreover, the City allegedly did not 
inform the municipal court that VSC was an interested party or had asserted a 
right to possession, as required by statute. See id. art. 47.03 (“The officer shall notify the court of the 
names and addresses of each party known to the officer who has a claim to 
possession of the seized property.”). The City does not challenge these 
assertions, and they are taken as true for purposes of this appeal of the plea 
to the jurisdiction.
            
VSC contends that it notified the City that it had a property interest in 
the vehicles and requested notice of any hearings. It further claims it had “a 
legitimate and recognized property interest” in the seized vehicles that the 
City destroyed by disposing of the vehicles without notice to VSC. The City does not dispute that it did not pay VSC any 
storage fees on the vehicles. At the trial court and court of appeals, the City 
asserted that because VSC was not the owner of the vehicles, it was not entitled 
to notice of Chapter 47 hearings.
            
VSC’s suit against the City in state court was amended multiple times, 
eventually alleging various state and federal causes of action. In its 
Fourth Amended Petition, filed just before the case was removed to federal 
court,[2] VSC alleged, among other things, that it 
was an “interested person” for purposes of Chapter 47, that it had a possessory 
property interest in the seized vehicles, and that the City’s actions 
constituted a taking under state and federal law. It sought injunctive relief, 
damages, and declaratory relief. VSC pled that the trial court “should 
specifically make a determination as to the rightful possession of the seized 
vehicles still in Defendants’ possession and Plaintiff’s property interest in 
these vehicles as well as vehicles recovered by Plaintiff in the 
future . . . .”
            
Later, in VSC’s Sixth Amended Petition, the live petition for this 
appeal, VSC alleged that the City had disposed of the remaining 276 vehicles. 
Nonetheless, it still sought, contrary to the Court’s suggestion, relief under 
Chapter 47. VSC alleged that the City “intentionally entered onto Plaintiff’s 
property and seized vehicles to which Plaintiff had a superior right to possess 
and in which Plaintiff had a recognized property interest,” that it was entitled 
to notice under Chapter 47, that the Court should declare its superior rights in 
the vehicles and that the City lacks authority to seize and dispose of the 
vehicles, and that it was entitled to damages for the City’s alleged taking of 
its interest in the vehicles.
            
Two claims are the subject of this appeal. One alleges that the City’s 
seizure and subsequent disposition of the vehicles without notice to VSC was a 
taking of VSC’s property interest in the vehicles for public use and violated 
VSC’s right to just compensation under the Texas and United States 
Constitutions. Tex. Const. art. 
I, § 17; U.S. 
Const. amends. V, XIV § 1. The second 
cause of action sought a declaratory judgment against the City related to its 
towing policies and its entitlement to storage fees.
            
The City filed a plea to the jurisdiction, asserting VSC could not state 
a valid takings claim and that VSC alleged no other basis to waive the City’s 
governmental immunity. The City did not allege at the trial court that VSC’s 
claims were unripe or otherwise not justiciable 
because VSC failed to request a hearing under Chapter 47. The trial court denied 
the plea to the jurisdiction, and the City brought an interlocutory appeal. 
See Tex. Civ. Prac. & Rem. Code 
§ 51.014(a)(8) (permitting interlocutory 
appeals from a court order that grants or denies a plea to the jurisdiction by a 
governmental unit). The court of appeals affirmed the trial court ruling as to 
the “public use” state and federal takings claims[3] and affirmed the denial of the plea as to 
VSC’s declaratory judgment action. 242 S.W.3d 584, 599 (Tex. App.—Dallas 2008, 
pet. granted). The City appealed, and we granted review.
            
The City argues that the trial court did not have jurisdiction because 
VSC does not have a valid property interest in the seized vehicles to assert a 
state takings claim. It argues that even if there is a property interest, the 
seizures themselves were not compensable takings. Although the parties discussed 
the applicability of Chapter 47 at oral argument, in its briefing to this Court 
the City did not argue that Chapter 47 was a prerequisite to suit or that its 
plea to the jurisdiction should be granted for VSC’s failure to exhaust any 
presuit procedure. However, today the Court avoids the 
issues raised by the parties and instead holds that the plea to the jurisdiction 
should be granted, not because VSC cannot state a takings claim, but because its 
takings claim is precluded by VSC’s failure to seek relief under Chapter 47. A 
close examination of Chapter 47 will help to understand the extent of the 
Court’s error.
II. Chapter 
47
A. Structure 
and Use of Chapter 47
            
Various statutes provide that a peace officer may seize property that has 
been, or appears to be, stolen. E.g., Tex. Transp. Code § 501.158(a). Chapter 47 of 
the Texas Code of Criminal Procedure provides a mechanism for return of that 
property. When an officer seizes property,
 
he shall immediately file a schedule of the same 
. . . with the court having jurisdiction of the case, certifying that 
the property has been seized by him, and the reason therefor . . . [and] shall notify the court 
of the names and the addresses of each party known to the officer who has a 
claim to possession of the seized property.
 
 
Tex. Code Crim. Proc. art. 47.03. If the ownership of the 
property is disputed, the officer “shall hold it subject to the order of the 
proper court.” Id. art. 47.01(a). If no criminal trial is pending, an appropriate 
judge, which may include a district judge, county court 
judge, statutory county court judge, magistrate, or justice of the peace “may 
hold a hearing to determine the right to possession of the property, upon the 
petition of an interested person, a county, a city, or the state.” Id. art. 47.01a(a). Following 
the hearing, the judge may award the property “to whoever has the superior right 
to possession,” or to the state, pending resolution of the criminal case. 
Id. “If it is shown in a hearing that probable cause exists to believe 
that the property was acquired by theft or by another manner that makes its 
acquisition an offense and that the identity of the actual owner of the property 
cannot be determined,” the court may award possession to the state for official 
purposes, for disposition as unclaimed property, or for destruction. Id. art. 47.01a(b).
            
Chapter 47 is different from civil forfeiture, which applies to seized property that was used in the commission of a crime. 
See Tex. Code 
Crim. Proc. arts. 59.01–.14. While Chapter 47 gives a small framework for the 
quick disposition of property “alleged to have been stolen,” it leaves important 
gaps in its procedure. Id. art 47.01. For 
example, the chapter does not refer to a party filing a “petition” or initiating 
a “civil action,” but only that an interested party may request a “hearing.” It 
does not require notice to interested parties, as the civil forfeiture statute 
does. Cf. id. art. 59.04(b) (requiring that, to 
institute civil forfeiture proceedings, the state’s attorney “shall cause 
certified copies of the notice to be served on [relevant] persons in the same 
manner as provided for the service of process by citation in civil cases”). 
Chapter 47 is schizophrenic in what the judicial officer may determine, whether 
it is the person who “has the superior right to possession,” id. art. 47.01a(a)(1), or who is the 
“actual owner” of the property, see id. arts. 
47.01(a), .02(b), .04. Compare Universal 
Underwriters Grp. v. State, 283 S.W.3d 897, 900 
(Tex. App.—Houston [14th Dist.] 2009, no pet.) (“[U]nder article 47.01a, the trial court determines ‘superior 
right to possession,’ rather than ownership.”), and Perry v. Breland, 16 S.W.3d 182, 189 (Tex. App.—Eastland 2000, 
pet. denied) (“The justice court had no jurisdiction . . . to 
determine ownership [of the property at issue] . . . .”), 
with Allstate Ins. Co. v. Troy’s Foreign Auto Parts, No. 05-00-01239-CV, 
2001 WL 840613, at *3 (Tex. App.—Dallas July 26, 2001, pet. denied) (“[Chapter 
47] provides the court with the power to direct the property be restored to the 
owner. In addition, the right to possession without legal ownership would render 
the possession useless . . . . The 
municipal court has jurisdiction to award both possession and title . . . .” (citations omitted)). And it certainly does not include any 
expression that Chapter 47 is the exclusive method of determining 
ownership, or a right to possession. “Nothing in the statute suggests that 
Chapter 47 provides the exclusive forum for establishing ownership.” Tipton Int’l, Inc. v. Davenport, No. 10-02-00242-CV, 2004 WL 
1474663, at * 3 (Tex. App.—Waco June 30, 2004, no pet.).
            
Because of the lack of specificity and comprehensive scheme, the only way 
to view Chapter 47 is as a process rather than a proceeding, 
applicable to a number of different judicial forums. Chapter 47 provides 
that a district, county court, statutory county court judge, or a justice of the 
peace or municipal judge with magistrate jurisdiction may “hold a hearing” to 
determine disposal of allegedly stolen property. Tex. Code Crim. Proc. art. 47.01a(a)(1). It is not surprising that our courts of appeals 
have dealt with Chapter 47 claims not only brought as stand-alone claims, but 
also as independent tort claims and counterclaims brought by the state in tort 
and constitutional civil rights actions against it. See York v. State, 
298 S.W.3d 735, 741 (Tex. App.—Fort Worth 2009, pet. filed) (alleging takings 
violation through improper disposal of trailer under Chapter 47); Universal 
Underwriters, 283 S.W.3d at 899 (noting that the state filed a “Petition for 
Disposition of Stolen Property” under Chapter 47); Allstate Ins. Co., 
2001 WL 840613, at *1 (“Seeking possession of [the property] under article 
47.01a [the parties] attended a hearing . . . .”); City 
of Pasadena v. De Los Santos, No. 01-98-00104-CV, 1999 WL 339335, at *1 
(Tex. App.—Houston [1st Dist.] May 27, 1999, pet. 
denied) (dismissing appeal from a trial court order holding that the city was 
entitled to possession of property in action wherein citizens sued city for 
civil rights violations for wrongful seizure and tort claims, and the city 
counterclaimed for possession of the property under article 47.01a). No wonder 
that the City did not claim that a separate action under Chapter 47 was a 
prerequisite to suit. And no wonder that VSC argued, and the City disputed, that 
it was entitled to a declaration from the trial court that VSC is an entity with 
a “claim to possession of the seized property” and entitled to notice under 
article 47.03. 242 S.W.3d at 599 (noting, and not reaching, 
the City’s contention that VSC is not entitled to notice under Chapter 
47).[4]
B. The Court’s Chapter 47 Prerequisite
            
But despite this, the Court contends that VSC loses its case here because 
it did not take advantage of the “statutory remedy” of Chapter 47. There is a 
ripeness requirement for federal takings claims based on state action. In 
general, for a federal takings claim to be ripe, the owner of the allegedly 
taken property must (1) obtain a final decision regarding the application of the 
regulations to the property at issue from the government entity charged with 
implementing the regulations, and (2) utilize state procedures for obtaining 
just compensation. Williamson Cnty. Reg’l Planning 
Comm’n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186 (1985).[5] There is some authority to suggest that 
the Williamson County requirements apply to physical takings as well as 
the more common regulatory taking scenarios. See Severance v. 
Patterson, 566 F.3d 490, 496–97 (5th Cir. 
2009). But Williamson County and its progeny do not apply 
in this situation.
            
The Court’s only substantial authority[6] for its proposition that Chapter 47 
precludes a takings claim is one distinguishable case. In Hays v. Port of 
Seattle, a contractor entered in to a “cost plus” contract with the 
Commissioner of Public Lands of the State of Washington to excavate waterways, 
secured by a lien upon the shorelands. 251 U.S. 233, 234 (1920). After the contractor began work, 
the Commissioner wanted to change plans, and when neither party provided new 
plans, the work stalled. Id. at 235. Seventeen 
years later, the Washington state legislature enacted statutes establishing the 
Port of Seattle and vested title to a port authority, which took over the 
waterway and performed its own excavation. Id. at 
236. Hays brought a bill in equity, seeking to enjoin the legislature’s 
act, as he alleged that it impaired his contract and took property without due 
process. Id. at 237–38. On the contract claim, 
the Supreme Court essentially held that he had abandoned the contract. Id. at 237. On the deprivation of property without due 
process claim, the Court held that Hays was barred from relief by laches. Id. at 238–39. It 
noted that, if he had not delayed, he could have filed a claim under what was a similar tort claim / state inverse condemnation 
proceeding under the then-active statute. Id. at 
238. The Court held that such a procedure “satisfies the requirement of 
due process of law as clearly as if the ascertainment of compensation had 
preceded the taking.” Id. The case is simply an early example of the 
Williamson County rule.
            
I see no legally determinative distinction in this context between 
protecting one’s property rights by requesting a hearing before a 
municipal judge under Chapter 47 and promptly filing an injunction action in 
district court after the original seizures. Surely such a lawsuit, when there is 
nothing in Chapter 47 that makes it the exclusive remedy or establishes it as a 
prerequisite to a takings claim, is sufficient under Williamson County. 
This is not an inverse condemnation regulatory taking claim, where an 
administrative agency must determine the scope of the regulation as a 
prerequisite to suit. Nor is this a lawsuit commanded by the Legislature to be 
an “exclusive” remedy for a particular wrong. Chapter 47 comprehends a lawsuit, 
in one form or another.
            
The Court’s holding creates a new rule preferring one type of civil claim 
over another, when no governing statute or case law has heretofore required it. 
It suggests that “[c]laims under chapter 47 may be 
brought in the same suit as other claims,” ___ S.W.3d ___ n.7, but provides no 
analysis why its rule that precludes the civil claims brought by VSC 
permits claims specifically under Chapter 47.
C. VSC’s 
Pleadings and Chapter 47
            
Even assuming that the Court is correct in its assertion that Chapter 47 
is somehow a prerequisite to other types of tort actions (which no party argues, 
no courts have held, and which the court of appeals precedent cited above 
demonstrates is simply not how the procedure works), I would hold that VSC 
sufficiently asserted its rights. The Court claims that “VSC, having notice of 
the vehicles’ seizure, should have initiated chapter 47 proceedings, both to 
notify the government that it was asserting an interest in the vehicles and to 
determine its interest in them. VSC failed to do so.” ___ 
S.W.3d___ n.17. The Court simply ignores VSC’s lawsuit and pleadings in 
reaching this unsupported conclusion.[7]
            
First, VSC sought a temporary restraining order. It later sought 
injunctive relief against the City, requesting, among other things, prohibitions 
against the City from “[o]rdering the release of any 
vehicle (in Plaintiff’s possession) for a reduced fee or charge” and from 
“releasing vehicles seized from Plaintiff that Plaintiff is authorized by law to 
possess and in which Plaintiff has a recognized property interest without 
requesting a hearing under Chapter 47 of the Texas Code of Criminal Procedure 
and including Plaintiff as an interested party and notifying Plaintiff of the 
hearing.” It sought declaratory relief, including a declaration that VSC “is the 
rightful possessor of seized vehicles currently in possession of” the City, and 
that VSC “has a property interest in the seized vehicles and is an interested 
person entitled to a Chapter 47 property hearing on vehicles seized” by the 
City. VSC requested relief in the nature of Chapter 47 (even though, as 
discussed above, it shouldn’t have to) by specifically requesting the court 
“make a determination as to the rightful possession of the seized vehicles still 
in Defendants’ possession and Plaintiff’s property interest in these vehicles . . . .” I see no significant 
difference between such a request for relief and a request to “hold a hearing to 
determine the right to possession of the property, upon the petition of an 
interested person.” Tex. Code Crim. Proc. 
art. 47.01a(a). At a minimum, VSC 
“notif[ied] the government that it was 
asserting an interest in the vehicles” and requested a “determin[ation of] its interest in 
them.” ___ S.W.3d ___ n.17. Particularly because VSC 
most likely did not believe that it could bring a claim under Chapter 47, and 
particularly because the City argued—up until oral argument before this 
Court—that VSC was not entitled even to notice of a Chapter 47 hearing—it 
is difficult to imagine what the Court would have had VSC do. Under our rules of 
notice pleading, VSC satisfied the prerequisites the Court musters. It does not 
deserve to have its claims dismissed.
            
Of course, a claimant may not simply sit on his rights for an 
unreasonable time period, knowing that the government has seized his property, 
and then claim that the government has taken his property when it has been sold. 
A claimant has some duty to investigate the status of his property and take 
reasonable steps to secure it from the government or receive just compensation 
for the taking. See, e.g., Hallco Tex., Inc. 
v. McMullen Cnty., 221 S.W.3d 50, 74 & n.38 
(Tex. 2006) (Hecht, J., dissenting) (discussing Texas cases applying limitations 
periods or laches to regulatory takings claims); 
see also, e.g., Waddy v. City of 
Houston, 834 S.W.2d 97, 102 (Tex. App.—Houston [1st Dist.] 1992, writ 
denied) (recognizing that an action for inverse condemnation of property is 
barred after the ten-year period necessary to acquire land by adverse 
possession, but an inverse condemnation action for damage to property is 
governed by the two-year statute of limitations).
            
VSC was not 
dilatory in protecting its rights. VSC promptly sought an injunction against the 
City. Thereafter, VSC participated in several Chapter 47 proceedings disposing 
of seized vehicles prior to seizure of the vehicles at issue in this proceeding. 
VSC was notified of the proceedings, and in most cases the municipal court 
either returned the vehicles to VSC or to the owners subject to the payment of 
fees owed to VSC. These proceedings protected VSC’s property rights and ensured 
that VSC’s liens were not improperly destroyed. Although VSC did not know it and 
the City disputed it, VSC could have included an explicit request for the trial 
court to hold a hearing pursuant to Chapter 47, but did not do so. On the other 
hand, the City could have filed a counterclaim in district court seeking 
possession and disposition of the vehicles, but it evidently did not do so. 
See De Los Santos, 1999 WL 339335, at *1. Instead, according to VSC, the 
City unilaterally determined that VSC did not have an interest in the vehicles 
entitling VSC to notice of any Chapter 47 proceedings and, notwithstanding the 
pendency of a lawsuit over the same vehicles, disposed of the vehicles by either 
returning them to their owners or selling them and keeping the proceeds. It is 
difficult to understand why the Court requires a party to file a separate civil 
action, or to use “magic words” in its petition invoking a malleable and 
incomplete procedure to enforce rights covered by a civil action as a 
prerequisite to filing the already-pending litigation.
D. Due 
Process
            
The Court states that “VSC suggests 
. . . that chapter 47 is constitutionally infirm because it 
does not require that the City notify claimed owners of these proceedings. 
Disputes about proper notice invoke procedural due process, not the Takings 
Clause.” ___ S.W.3d___. VSC is not claiming a violation 
of due process, and the City has not argued that Chapter 47 is a prerequisite to 
a takings claim. It is the Court’s invocation of a prerequisite to Chapter 47 
that does that. Rather, in its active petition, VSC’s complaint was about its 
money—it alleged that the City intentionally seized property for a public 
purpose in which VSC had a property interest and suffered damages. A claim for 
deprivation of due process cannot be the basis for a takings 
claim.
            
However, for the reasons articulated above, if Chapter 47 were required 
as a prerequisite to suit, I disagree that Chapter 47 “complies with both the 
Texas and United States Constitutions” to protect VSC’s property interests. 
Although any interested party may request a hearing under Chapter 47, the 
existence of the Chapter 47 proceeding itself would not immunize a governmental 
entity from takings liability.[8] The proceeding may result in returning 
the vehicle to VSC (and thus potentially mooting VSC’s takings claim), and the 
municipal court may return a vehicle to an owner subject to the owner paying 
VSC’s fees (also potentially mooting VSC’s takings claim). Yet, no provision of 
Chapter 47 specifically deals with ownership of the vehicle or of the lien that 
is created when VSC properly takes possession of a vehicle and provides notice 
as required by the Property Code. Likewise, while article 47.03 requires that an 
officer provide notice to the relevant court “of the names and addresses of each 
party known to the officer who has a claim to possession of the seized 
property,” nothing in Chapter 47 requires that the court or anyone else provide 
notice to the vehicle’s owner or any other person with an actual interest in the 
seized vehicle and/or of the hearing. This facial infirmity in the statute has 
been recognized and addressed informally by municipal court judges who indicate 
in their Bench Book for Chapter 47 hearings that such notice should be given. 
Texas Municipal Courts Education Center, 
2008 Bench Book 45 (2008); cf. Tex. Code Crim. Proc. art. 47.03. As discussed 
above, I believe that disposing of property without notice to the property owner 
would raise serious due process concerns. But those concerns arise only if a 
Chapter 47 hearing is a prerequisite to a takings suit.
            
The Court also states that once an owner or interested party’s property 
has been legitimately seized by the government, the government need not give 
notice even years later that it is about to permanently dispose of the property. 
___ S.W.3d ___. There are two responses to this 
position. First, it makes no sense. Even though criminal proceedings in which 
such property may be germane may take months or years, the Court indicates that 
the state might simply dispose of potentially valuable property after its 
usefulness for criminal prosecutions wanes or it has been determined not to have 
been stolen, without giving the owners or interest holders an opportunity to 
intervene. The property owners do not know when the confiscated property is no 
longer needed. After legitimately seizing private property, the government 
should give notice to the owners and interest holders before disposing of the 
property. Even in forfeiture cases, if “the government intends to make permanent 
the deprivation of property seized at the time of an arrest, whether through 
forfeiture or destruction of that property, adequate notice is required.” 
United States v. Cardona-Sandoval, 518 F.3d 13, 16 (1st Cir. 2008); 
see Matthias v. Bingley, 906 F.2d 1047, 1052–53 (5th Cir. 1990). Second, 
VSC did file an injunction action in state district court to protect its 
interests in the property and asserted that the district court should determine 
ownership and possession of the vehicles. But the Court’s holding makes that 
action useless.
            
The Court errs when it holds that a Chapter 47 proceeding is the only 
state adjudication that may serve as a prerequisite to a takings claim. It 
compounds its error by holding that VSC did not live up to its newly created 
standard in its pleadings in district court. I would hold that no such 
prerequisite exists, either in our case law on takings or in Chapter 47 itself, 
and I would not dismiss VSC’s claims on that basis.
III. VSC’s State Takings 
Claim
            
Because I would not hold that VSC’s failure to seek possession of the 
vehicles specifically under Chapter 47 precludes its takings claim, I now 
proceed to analyze the merits of the dispute. The City asserts the trial court 
erred in denying its plea to the jurisdiction to VSC’s takings claim. The City 
does not have immunity from a valid takings claim. See Gen. Servs. Comm’n v. Little-Tex Insulation 
Co., 39 S.W.3d 591, 598 (Tex. 
2001). However, if the plaintiff fails to allege a valid 
takings claim, the City retains its immunity from suit. See id. 
(affirming a grant of a governmental entity’s plea to 
the jurisdiction where the plaintiff’s constitutional takings claim failed). 
Whether particular facts constitute a taking is a question of law. Id. 
(citation omitted).
            
Article one, section seventeen of the Texas Constitution provides: “No 
person’s property shall be taken, damaged, or destroyed for or applied to public 
use without adequate compensation being made, unless by the consent of such 
person . . . .” Tex. 
Const. 
art. I, § 17. A takings claim 
consists of three elements: (1) an intentional act by the government under its 
lawful authority, (2) resulting in a taking of the plaintiff’s property, (3) for 
public use. See Little-Tex Insulation Co., 39 S.W.3d at 598; see also 
State v. Holland, 221 S.W.3d 639, 643 (Tex. 2007); City of Dallas v. 
Jennings, 142 S.W.3d 310, 313 (Tex. 2004).
            
The City challenges VSC’s takings claims on four grounds: (1) VSC could 
not have a property interest in stolen vehicles; (2) the City did not seize 
VSC’s liens or debts, only the vehicles; (3) the seizure was not for “public 
use”; and (4) the seizure occurred under the proper and reasonable exercise of 
the City’s “police power” or some other exception to a takings 
claim.
A. VSC’s 
Property Interest
            
I would hold, as the Court “assume[s],” ___ S.W.3d ___ n.10, that VSC had 
a cognizable property interest in the vehicles through the “garageman’s lien” in the Property Code. “A garageman with whom a motor vehicle . . . is left for care 
has a lien . . . for the amount of the charges for the care, 
including reasonable charges for towing . . . to the garageman’s place of business and excluding charges for 
repairs.” Tex. Prop. Code § 70.003(c). The Property 
Code does not define “garageman” or identify exactly 
what “care” is required for the lien to attach. The dictionary defines “care” as 
“protection; charge; temporary keeping as for the benefit of or until claimed by 
the owner.” Random 
House Unabridged Dictionary (1987). Vehicle Storage Facilities 
must provide protection and keep vehicles for the benefit or until claimed by 
the owner. They must also provide reasonable storage efforts to protect 
vehicles, “such as locking doors, rolling up windows, and closing doors, 
hatchbacks, sunroofs, trunks, hoods, or convertible tops” and putting tarps over 
vehicles whose interiors are open to the elements. 16 Tex. Admin. Code § 85.719(a), 
(b). Thus, under the plain language of the Property Code, a 
vehicle storage facility that follows the requirements of the statute would 
qualify as a “garageman.”
            
The City argues that the VSFA precludes VSC’s claim to garageman’s lien rights because only the VSFA determines the 
rights and interests of a “Vehicle Storage Facility.” Although 
that act regulates the operation of “Vehicle Storage Facilities” which, among 
other things, store at least ten vehicles each year without the owners’ consent, 
Tex. Occ. Code §§ 2303.001–.003, .151–.161, 
no language in the VSFA excludes Vehicle Storage Facilities from the benefits of 
the garageman’s lien. Further, the VSFA allows a 
vehicle storage facility to withhold a vehicle from its owner or operator “if 
the owner or operator of the vehicle does not pay the charges associated with 
delivery or storage of the vehicle . . . .” Id. 
§ 2303.160(c). And the garageman’s lien 
statute specifically recognizes that a garageman may 
come into possession of a vehicle not only through the consent of the owner of 
the vehicle but also “under a state law or city ordinance.” Tex. Prop. Code § 70.004(a). The VSFA 
specifically permits Vehicle Storage Facilities to retain possession of vehicles 
if an owner refuses to pay the storage charges, and the garageman’s lien statute recognizes that a garageman can come into possession of a vehicle in a manner 
other than it being left by the owner. The two statutes are not mutually 
exclusive, but complementary.
            
Further, the garageman’s lien statute can 
reasonably be read to include vehicles “left for care” by those other than the 
vehicles’ owners. The statute uses the passive voice—“is left for 
care”—indicating that who leaves the vehicle with the garageman is inconsequential to whether the lien attaches. 
Id. § 70.003(c). The next section of the 
Property Code specifically contemplates a garageman’s 
lien in favor of one who stores a vehicle without the owner’s consent. “A holder 
of a lien under Section 70.003 on a motor vehicle . . . who 
obtains possession . . . under a state law or city ordinance 
shall give notice . . . to the last known registered owner and 
each lienholder of record . . . .” 
Id.§ 70.004. The garageman’s lien statute grants a lien to an entity, 
including a Vehicle Storage Facility, who came into possession of the vehicle 
lawfully. See Tex. Prop. Code 
§ 70.003(c) (“A garageman with whom a motor 
vehicle . . . is left for care has a 
lien . . . .”). VSC may acquire a garagemen’s lien on vehicles “left for care” with them, 
regardless of whether they were left voluntarily or without the owners’ 
consent.
            
I would hold that if VSC can show these vehicles were left for care with 
them and that they followed the proper procedures under both the VSFA and the 
Property Code, VSC establishes a valid garageman’s 
lien in the vehicles and thus a valid property interest worthy of protection 
under the takings clause.
B. Liens and 
the Takings Clause
            
The City contends that even if VSC had a property interest in liens on 
the stored vehicles, the recovery by police of stolen vehicles cannot be the 
basis of a compensable taking. The City erects a strawman, contending that the vehicles were 
stolen.
            
First and foremost, there is no judicial determination in the record that 
any of the vehicles at issue were in fact stolen. There appears to have been a 
sufficient basis for DPD initially to obtain possession. See Tex. Transp. Code § 501.158(b). However, 
whether the vehicles were stolen is a factual matter to be determined at the 
trial court. Because the City has not shown the vehicles to have been stolen, 
the City’s contention that a lien cannot attach to a stolen vehicle that has 
been innocently stored need not be addressed.[9]
            
The United States Supreme Court considered a similar takings claim in 
Armstrong v. United States, 364 U.S. 40 (1960).[10] In Armstrong, materialmen delivered materials to a prime contractor for 
use in constructing U.S. Navy personnel boats. Under state law, they obtained 
liens on the vessels. Id. at 41. The prime 
contractor defaulted on his obligations to the United States, and the government 
took title to and possession of the uncompleted hulls and unused materials. 
Id. The United States government argued that any destruction of the 
plaintiffs’ liens could not constitute a taking due to the government’s 
immunity. Id. at 47. The Court 
held:
 
The total destruction by the Government of all value of 
these liens, which constitute compensable property, 
has every possible element of a Fifth Amendment “taking” and is not a mere 
“consequential incidence” of a valid regulatory measure. Before the liens were 
destroyed, the lienholders admittedly had compensable 
property. Immediately afterwards, they had none. This was not because their 
property vanished into thin air. It was because the Government for its own 
advantage destroyed the value of the liens . . . . Neither 
the boats’ immunity, after being acquired by the Government, from enforcement of 
the liens nor the use of a contract to take title relieves the Government from 
its constitutional obligation to pay just compensation for the value of the 
liens the petitioners lost and of which loss the Government was the 
direct, positive beneficiary.
 
 
Id. at 48–49. Thus, the state violates 
the takings clause by destroying valid liens on property for public use without 
just compensation. See also United States v. Sec. Indus. Bank, 459 U.S. 
70, 75, 78 (1982) (holding that liens were property protected by the takings 
clause of the Fifth Amendment); Ft. Worth Improvement Dist. No. 1 v. City of 
Fort Worth, 158 S.W. 164, 168 (Tex. 1913) (“The word ‘property,’ as used in 
[article one, section seventeen of the Texas Constitution], is doubtless used in 
its legal sense, and means not only the thing owned, but also every right which 
accompanies ownership and is its incident.”).
            
Whether the City destroyed VSC’s liens is a question of fact that the 
trial court did not have an opportunity to decide, as that question is the 
subject of an interlocutory appeal of a plea to the jurisdiction. Rather, the 
question to this Court is whether VSC can overcome the City’s plea to the 
jurisdiction and state a valid takings claim. According to its various 
pleadings, VSC alleges that the City, after seizing the vehicles, took one of 
three possible actions: (1) it stored the vehicles and is still storing them 
(though, by the time of the Sixth Amended Complaint, it seems that VSC believed 
that the City had disposed of all of the vehicles); (2) it returned the vehicles 
to their rightful owners; or (3) it sold the vehicles and kept the proceeds. In 
all three scenarios, VSC claims it was deprived of fees for its storage of the 
vehicles.
            
Regardless of whether VSC’s lien is possessory or nonpossessory, VSC’s lien could be foreclosed on, and VSC 
can pursue its lien rights for storage fees because it did not voluntarily 
relinquish possession of the vehicles. See Paul v. Nance Buick Co., 487 
S.W.2d 426, 427–28 (Tex. Civ. App.—El Paso 1972, no writ) (distinguishing 
between possessory and nonpossessory liens and noting 
that even in possessory liens, the lien and right to possession are not lost if 
the property is relinquished voluntarily). VSC is free to pursue its property 
interests allegedly taken in the seized vehicles in its state district court 
case or under Chapter 47 of the Code of Criminal Procedure. Tex. Code Crim. Proc. §§ 47.01a, 
.02.
            
It is unclear how the City disposed of these vehicles, a crucial question 
of fact as to whether VSC can assert a valid takings claim. VSC claims the City 
destroyed its liens on the vehicles. The City offers no evidence to rebut this claim nor even an assertion of the disposition of the 
vehicles. Therefore, a fact question remains, and I would hold that the trial 
court was correct to deny the City’s plea to the jurisdiction.
C. Police 
Power
            
The City argues that the vehicle seizures were a valid exercise of police 
power exempted from takings liability.[11] The distinction 
between the state’s eminent domain power and police power has been the subject 
of much consternation, and attempts to distinguish the powers can involve courts 
in a “sophistic Miltonian Serbonian Bog.” Sheffield Dev. Co. v. City of Glenn 
Heights, 140 S.W.3d 660, 671 (Tex. 2004) (quoting City of Austin v. 
Teague, 570 S.W.2d 389, 391 (Tex. 1978) (further quotation and citation 
omitted)).
            
In DuPuy v. City of Waco, this 
Court noted that the distinction is said to rest on “the relation which the 
property affected bears to the danger or evil which is to be provided against.” 
396 S.W.2d 103, 107 n.2 (quotation omitted). Police 
power involves the regulation of property that harms the community in order to 
prevent the harm; eminent domain involves the taking or destruction of private 
property for public use. Id. at 107 n.3 (quotation omitted); see also 
Tahoe-Sierra, 535 U.S. at 323 (“This longstanding distinction between 
acquisitions of property for public use, on the one hand, and regulations 
prohibiting private uses, on the other, makes it inappropriate to treat cases 
involving physical takings as controlling precedents for the evaluation of a 
claim that there has been a ‘regulatory taking,’ and vice versa.”). But as the Court conceded in DuPuy, 
“our refusal to compartmentalize an exercise of sovereignty as either police 
power or eminent domain for the resolution of problems arising under Article I, 
Sec. 17, of the Constitution rests upon the manifest illusoriness of 
distinctions between them.” 396 S.W.2d at 107. 
On the other hand,
 
it is universally conceded that when land or other 
property is actually taken from the owner and put to use by the public 
authorities, the constitutional obligation to make just compensation arises, 
however much the use to which the property is put may enhance the public health, 
morals or safety.
 
 
Id. at 107 n.3 
(citations omitted). Put another way, “[w]hen the government physically 
takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former 
owner . . . regardless of whether the interest that is taken constitutes an 
entire parcel or merely a part thereof.” Tahoe-Sierra, 
535 U.S. at 322 (citation omitted). The police power distinction may lead 
courts into a bog, but the law of physical takings rests on firm, dry 
land.
            
We have 
recognized that “[a] city is not required to make compensation for losses 
occasioned by the proper and reasonable exercise of its police power.” City of Coll. Station v. Turtle Rock Corp., 680 S.W.2d 802, 
804 (Tex. 1984). However, the state cannot commit a physical taking, by 
taking or destroying property, and escape liability for compensation by merely 
“labeling the taking as an exercise of police powers.” Steele v. City of Houston, 603 S.W.2d 786, 789 (Tex. 
1980). The City argues that its actions do not amount to a physical 
taking because even if VSC’s liens were somehow taken, they are intangible 
property and thus cannot be physically taken. But the liens in 
Armstrong were the same type of property interest as those here, and as 
the Court stated there, “[t]he total destruction by the Government of all value 
of these liens, which constitute compensable property, 
has every possible element of a Fifth Amendment ‘taking’ and is not a mere 
‘consequential incidence’ of a valid regulatory measure.” 364 U.S. at 48 
(emphasis added). The Court has affirmed this characterization of the 
government’s destruction of liens in Armstrong as a physical taking. “The 
Government seeks to distinguish Armstrong on the ground that it was a 
classical ‘taking’ in the sense that the Government acquired for itself the 
property in question . . . . The classical taking is of the sort that the 
Government describes . . . .” 
Sec. Indus. Bank, 459 U.S. at 77–78. I see no reason why intangible and 
valuable property interests cannot be physically taken and why the police power 
exception provides a free pass when government officials 
try.
            
Further, while the reasonable, necessary, and proper application of the 
police power may excuse a governmental unit from providing just compensation, 
there is nothing here to suggest that there is any police power interest in the 
taking of VSC’s liens. The valid exercise of the police power over potentially 
stolen vehicles does not extinguish an undisputed and legally applied lien on 
the vehicle. Thus, these seizures and alleged sales of the vehicles do not 
constitute the proper exercise of the police power over VSC’s liens, and 
Turtle Rock is not applicable to the situation at bar, despite its 
perhaps broad language.
            
VSC alleges that the City seized vehicles from their storage facility, 
disposed of them (thereby destroying all property interest they had in the form 
of liens), and kept the proceeds for itself. These actions satisfy the basic 
elements of a physical taking—taking or destroying property for public use. As 
we have said, “[t]he social desirability of leaving government free to seek its 
own enrichment at the expense of those whom it governs under the guise that it 
has the power to regulate harmful conduct is not readily apparent.” 
Teague, 570 S.W.2d at 393–94. The final 
destination of the seized vehicles is absent from the record, and we decline to 
speculate. But the City cannot avoid paying compensation to VSC by “labeling the 
taking as an exercise of police powers.” Steele, 603 
S.W.2d at 789.
D. Special 
Exception
            
Finally, the City argues that we should carve out a special exception to 
a physical takings claim for the recovery of stolen property.[12] The City focuses its analysis on cases 
confirming the absence of takings liability for civil forfeiture proceedings 
against “innocent” owners, citing Bennis v. 
Michigan, 516 U.S. 442 (1996), and State v. Richards, 301 S.W.2d 597 
(Tex. 1957). But Bennis and Richards, 
civil forfeiture cases whose holdings rest on the unique nature of forfeiture as 
a criminal deterrent, are inapposite. Further, they affirm that an “innocent” 
owner’s property cannot be forfeited when the property was taken without privity or consent. Bennis, 516 U.S. at 
448–52 & n.5; Richards, 301 S.W.2d at 
599–600.
            
VSC has a valid lien, the loss of which may be compensable as a taking if 
the City, without notice, disposed of the vehicles and kept their proceeds. 
Because fact questions exist in this case, VSC has pled and submitted sufficient 
evidence to withstand the City’s plea to the jurisdiction. I would thus hold 
that the immunity does not bar VSC’s state takings claim at this stage.[13]
IV. Declaratory 
Judgment
            
The City asserts the trial court erred in denying its plea to the 
jurisdiction as to VSC’s declaratory judgment action. “A declaratory judgment is 
appropriate only if a justiciable controversy exists 
as to the rights and status of the parties and the controversy will be resolved 
by the declaration sought.” Bonham State Bank v. 
Beadle, 907 S.W.2d 465, 467 (Tex. 1995). Based on the declaratory 
relief requested in the currently pending Sixth Amended Petition and VSC’s 
current status, I agree with the Court that “there is no apparent conflict at 
all, and as such the relief sought is highly speculative and theoretical, 
incapable of settling any actual controversy between the parties.” ___ S.W.3d___ (citing Bonham State Bank, 907 S.W.2d at 467; 
State ex rel. McKie v. Bullock, 491 S.W.2d 659, 
660 (Tex. 1973)). I therefore concur in the Court’s judgment on the 
declaratory judgment claim. However, I do not believe such a holding forecloses 
VSC’s Chapter 47-like claims related to possession of or rights in the 
past-seized vehicles.
V. 
Conclusion
            
Evidence demonstrated that the City seized 276 vehicles VSC lawfully 
possessed and on which it had storage liens. VSC alleges that the City disposed 
of the 276 vehicles without notice of how, when, or where the disposal occurred. 
Although VSC immediately filed an injunction action in district court over the 
propriety of the City’s seizures of its property and the payment of its storage 
fees for the vehicles, the Court holds that such action is useless in protecting 
VSC’s property rights. I would hold that the trial court and court of appeals 
were correct to deny the City’s plea to the jurisdiction. Even assuming the 
Court’s prerequisites, I would hold that VSC’s pleadings in the district court 
were sufficient to invoke the requested relief in Chapter 47 and thus VSC’s 
entire case should not be barred. I would remand the case to the trial court to 
make a determination of the unanswered questions of fact and determine whether 
VSC’s property was wrongfully taken.
            
I therefore respectfully dissent.
 
 
                                                                                    
 ______________________________
                                                                        
            
 Dale Wainwright
                                                                                    
 Justice
 
OPINION DELIVERED: July 1, 2011






[1] VSC 
does not seek damages for the loss of any of the fifty vehicles subject to the 
Chapter 47 hearings.

[2] The 
City removed the case to federal district court. At VSC’s request, the federal 
court remanded three of the causes of action to the state court and abated the 
remaining federal claims until disposition of the state court litigation. The 
third cause of action, a takings claim for private use, is not at issue because 
the court of appeals dismissed it. Neither party appeals that 
decision.

[3] VSC 
contended, in the alternative, that the seizures constituted a taking of private 
property for a “private use.” The court of appeals reversed the trial courts’ 
denial of the plea on this claim, which is not before us.

[4] The 
Court says that the dissent’s position could hamper law enforcement. That 
misconstrues the dissent. First, to be clear, this case does not involve 
property subject to civil forfeiture because of its use in the commission of a 
crime, notwithstanding the Court’s reliance on forfeiture cases. That is not at 
issue and no one argues it is. The vehicles were towed to a private, licensed 
storage facility (VSC) for safekeeping. Second, the Court chastises the dissent 
saying “it is difficult to charge the government with the duty of notice.” __ S.W.3d __. Actually, the Court’s quibble is with the 
statute. Chapter 47 mandates, presumably to allow for notice of the proceeding, 
that when an officer seizes property alleged to have been stolen, he shall 
“immediately file a schedule of the same . . . [and] notify the court of the names 
and addresses of each party . . . who has a claim to possession of the 
seized property.” Tex. Crim. Proc. Code art. 47.03. Moreover, federal 
courts have held that, even in forfeiture cases, if the government intends to 
make permanent the deprivation of property seized at the time of an arrest, 
adequate notice is required. United States v. Cardona-Sandoval, 518 F.3d 
13, 16 (1st Cir. 2008) (concerning personal items destroyed nearly two years 
after confiscation); see Matthias v. Bingley, 906 F.2d 1047, 1052 
(5th Cir. 1990). Simply knowing that the government confiscated the property at 
some tlinetime in the past is insufficient.

[5] The 
first part of the Williamson County rule (most applicable to regulatory 
takings) ensures that there is a regulatory interpretation about the scope of 
the regulation for the court to determine whether the regulation goes “too far.” 
Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 929 (Tex. 
1998). It has been applied to state court takings claims. But the second 
part—the exhaustion requirement the Court sees as determinative—has not been 
applied to state takings. “Ordinarily, a plaintiff must seek compensation 
through state inverse condemnation proceedings before initiating a 
takings suit in federal court, unless the State does not provide adequate 
remedies for obtaining compensation.” Suitum 
v. Tahoe Reg’l Planning Agency, 520 U.S. 725, 734 
n.8 (1997) (emphasis added) (citation omitted). In other words, in deference to 
the state and the Fifth Amendment’s protection against the state depriving 
property “without just compensation,” to state a claim under the Fifth 
Amendment, a state court action must come first. That is exactly what VSC 
did in this case.

[6] The 
Court cites a number of federal appellate court opinions for the proposition 
that “where a claimant fails to take advantage of a State’s post-deprivation 
procedures, that claimant cannot then complain of the State’s subsequent 
disposition of the property.” ___ S.W.3d ___ n.17. The 
cases are inapposite. Revell v. Port Authority of New York is a case in 
which the appellate court held that because the plaintiff failed to file a state 
tort lawsuit for conversion or a writ of replevin 
before seeking remedies in federal court for deprivation of property without due 
process. 598 F.3d 128, 139 (3d Cir. 2010). VSC’s requests for injunctive and declaratory relief certainly 
qualifies in that case. Likewise, in Mora v. City of Gaithersburg, 
the Fourth Circuit held that a plaintiff’s § 1983 procedural and substantive due 
process claim seeking the return of firearms was “like a state law claim dressed 
up in due process clothing,” and thus declined to exercise supplemental 
jurisdiction over the claims. 519 F.3d 216, 231 (4th Cir. 
2008). Once again, we are in state court, VSC’s constitutional claims are 
takings, not due process, and VSC did assert claims of injunctive and 
declaratory relief against the governmental entities. McKinney v. Chidley is an unpublished Ninth Circuit case in which 
the panel merely recites that the pro se plaintiff “did not follow California 
state law procedures for recovering property” and awarded summary judgment to 
the law enforcement officials. No. 03-56068-CV, 87 F. App’x 615, 617 (9th Cir. 2003) (unpublished mem. op.). These cases do not address a state inverse 
condemnation claim, address a plaintiff’s attempt for injunctive relief and 
request to be named as an “interested person” in the state court procedure for 
return of property, or are otherwise applicable to VSC.

[7] The 
Court contends that VSC did not adequately pursue its Chapter 47 remedies and 
failed to raise them in its response to the City’s plea to the jurisdiction. The 
record shows otherwise. After the City filed its plea to the jurisdiction (on 
June 24, 2005) in the state district court case, VSC filed its Sixth Amended 
Petition (on July 25, 2005) continuing to seek a declaratory judgment for 
Chapter 47 relief and compensation for a taking, as I specifically set out in 
Section I above. The Sixth Amended Petition did not contain the specific 
requests for possession that were in earlier pleadings because VSC believed, and 
pled, that the City had already disposed of all the vehicles. However, in its 
response (filed on July 27, 2005) to the City’s plea, VSC again asserted its 
“property interest and/or lien for towing, storage, other fees and taxes” with 
respect to the vehicles taken, that “VSC is an interested party with a claim to 
possession entitled to notice and a hearing pursuant to Chapter 47 of the Texas 
Code of Criminal Procedure,” that it brings the claim for a declaration of “its 
rights under Chapter 47”and that the City committed a taking for which VSC is 
entitled to just compensation. Certainly, in a notice pleading jurisdiction (and 
perhaps even if not), VSC’s pleadings raise the issue of its rights and remedies 
under Chapter 47. Discovery hearings were held but we cannot discern from the 
record whether hearings were held to address the merits of VSC’s 
complaints.

[8] Chapter 
47 is not a forfeiture statute. The vehicles at issue in 
Chapter 47 proceedings, while they may have been stolen, are not contraband, 
instrumentalities of crime, or proceeds of criminal activity. The purpose 
of Chapter 47 is to return stolen property to its rightful owner. The government 
may dispose of the property, not because the property is “tainted” and should be 
taken from the public domain, with the proceeds going to the state, but only 
when the state, after some reasonable search, cannot ascertain the property’s 
owner. To use Chapter 47 to circumvent the procedure for seizing contraband, a 
much higher threshold of proof for the state, would raise serious constitutional 
concerns.

[9] The 
City has presented no case and I have not found any case from another 
jurisdiction holding that a garageman’s lien for 
vehicle storage costs cannot attach to stolen vehicles that the City takes to a 
storage lot for safekeeping. Further, this holding is limited to liens 
created for the safekeeping of allegedly stolen property and is separate and 
apart from our precedent regarding transfer of title to stolen property 
by a thief to a subsequent purchaser. Cf. McKinney v. Croan, 188 S.W.2d 144, 146 (Tex. 1945) (recognizing the 
common law rule that a subsequent purchaser may not acquire title to stolen 
property from a thief) (citations omitted).

[10] The 
takings clauses in the United States and Texas Constitutions are comparable, 
though worded differently, and so Texas courts have looked to 
federal jurisprudence for guidance on the constitutionality of a taking. 
Sheffield Dev. Co. v. City of Glenn Heights, 140 S.W.3d 660, 669 (Tex. 2004); City of 
Austin v. Travis Cnty. Landfill Co., 73 S.W.3d 234, 238–39 
(Tex. 2002); Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 932 (Tex. 1998). 
The most recent amendment to article I, section 17, limiting when the state may 
condemn land for private development, does not apply to this case. Tex. Const. art. I, § 
17.

[11] VSC 
has a valid takings claim only if the City destroyed its lien on the vehicles, 
so I only analyze the exemption arguments in that specific situation, 
i.e., if VSC can show that the City sold the vehicles and kept the proceeds. 
I would not reach the question of whether the seizure of stolen vehicles in 
order to return them to their rightful owner is a valid exercise of police power 
for which no compensation is owed.

[12] Again, 
because I would hold that VSC can only have a valid takings claim if the City 
destroyed their liens, I only analyze whether an exception should be made if VSC 
can show that the City sold the vehicles and kept the proceeds after 
seizure.

[13] VSC 
also brought a federal takings claim. The City contends that VSC’s federal 
takings claim is unripe until VSC has sought and been denied compensation in 
state court, and therefore the trial court lacks jurisdiction. “The fact that 
the federal constitutional guaranty is not violated if state law affords just 
compensation does not preclude both claims from being asserted in the same 
action. Recovery denied on the state takings claim may yet be granted on the 
federal claim, in the same action.” Town of Flower Mound v. 
Stafford Estates Ltd. P’ship, 135 S.W.3d 620, 646 
(Tex. 2004). I would thus agree with the court of appeals that the trial 
court correctly denied the City’s plea to the jurisdiction on this 
issue.